DEBORAH WOOD, RESPONDENT, v. JOHN I. FLEET AND
OTHERS, APPELLANTS.

*Real Estate—Parol Partition binding when.*

A parol partition of real estate, followed by possession in accordance there-
with, and the exercise of exclusive acts of ownership, is legal and binding,
and will be enforced in the courts of this State.

*I. I. Townsend* for Appellants.
*H. J. Scudder* for Respondent.

DAVIES, CH.J.—This action is instituted to effect a division or
partition of the real estate whereof Daniel Fleet died seized. He
died intestate on the 20th of January, 1858, in possession of the
premises whereof partition is sought, leaving the Defendant, Re-
becca Fleet, his widow, the Appellants, the sons of his brother,
James Fleet, deceased, and the Respondent, his sister, him sur-
viving, and his only heirs-at-law. He left no issue. The referee
before whom this action was tried found as facts, that Arnold
Fleet, of Oyster Bay, was seized in fee of the lands, a portion of
which were sought to be partitioned, and had been so seized for
about fifty years before his death. The whole farm contained
two hundred and five acres. He died August 9, 1839, intestate,
leaving a widow and two sons, Daniel Fleet and James Fleet,
and a daughter, Deborah (then the wife of John Wood), this Re-
spondent, his only heirs-at-law. On the 7th of September, 1839,
Deborah Wood and her husband duly conveyed her share of said
lands to her brothers, Daniel and James. Before October, 1846,
it was verbally agreed between Daniel and James that the farm
should be divided between them, and the boundary line between
them was agreed upon. It was a visible monument, viz., a fence;
and it was agreed that Daniel should have as his own in severalty
in fee, all that part of the farm north or west of that line, and
James should have as his own in fee in severalty, all the part
south or east of that line, but that no written instrument was
executed by either party conveying his share until shortly before

17

Daniel's marriage. That in pursuance of, and to perform it on his part, Daniel, before his marriage, and before the month of October, 1846, at the request of James, conveyed by deed to James in fee, all his (Daniel's) undivided half interest in the part of the farm which they had agreed should belong to James, in fee in severalty. That the part it was agreed James should have contained the homestead occupied by their father, and which James and Daniel had continued to occupy until the 28th of October, 1846, when Daniel, upon his marriage, left the homestead and resided at the house of his wife's brother, and occupied the part of the farm agreed to be held in severalty by him, cultivated and improved it, he alone controlling and managing it. That he, on the faith of this agreement, erected a new dwelling-house and made other improvements and repairs on that part of the farm thus assigned to him, at a cost of about $4,000, the whole of which was borne by him alone. That these improvements were completed in November, 1848, when he and his wife moved into said new house, and continued to occupy it until his death. That Daniel alone exercised exclusive ownership over the land, from the time of the final agreement for the division until his death. That his brother James, or the sons of James, after the latter's death, neither claimed nor exercised any ownership over that part. That Daniel alone received all the products of the farm, claiming them as his own, no one disputing his claim, and that he applied them to his own use. James in like manner, and his heirs after his decease, exclusively occupied the part assigned by the agreement to James, treating it in like manner as belonging exclusively to James and his heirs. The land was separately assessed to Daniel and to James, and to his heirs. In February, 1847, Daniel brought a quit-claim deed for the part assigned to him, to James, and requested him and his wife to execute it. James' wife was then unwell, and on that account the execution of the deed was postponed until she should be better, it being then promised by James and his wife that it should be executed.

The referee found, as a matter of law, that the agreement for a partition, followed out by a deed executed to James for his part

by Daniel, by a demand by Daniel of a deed for his part from James, and by the exclusive occupation by each of his own part, each claiming as his alone the part agreed to be his, and the other not disputing that claim, and each taking as his own alone the products of his own part, except when, by his permission, he allowed others to enjoy it, and on the faith of the agreement Daniel making valuable improvements, gave to Daniel a legal title in severalty in fee, to the whole of that part of the farm which, by the agreement, was to be his alone. He also found as matter of law, that the same acts would give an equitable title to a like extent, if they did not give a legal title. And he also found as matter of law, that the subsequent declination of a deed by Daniel, and his subsequent declarations in his report mentioned, did not affect or impair in any way his title, or that of his heirs, to hold the same lands in severalty in fee.

The referee gave judgment declaring the rights of the parties accordingly, and judgment thereon was affirmed at the General Term.

The only question presented for adjudication upon this appeal is, whether the partition by parol made by Daniel and James Fleet, of the farm inherited by them from their father, Arnold Fleet, followed, as it was, by the acts and declarations of these heirs, was valid and binding. Whatever may be the state of the law in England, or in other States of this Union, it would seem that in this State it should not now be questioned that a parol partition of real estate followed by possession in accordance therewith, and the exercise of acts of exclusive ownership, is legal and binding, and should not be distrusted, but enforced and adhered to. An unbroken current of decision in this State affirms this proposition. As early as 1804, in Jackson *v.* Bradt (2 Caines' R. 174), the Supreme Court of this State had occasion to refer to a partition not made in accordance with the act of January 8, 1762. The sixth section of that act declares, that every former division of lands, of which there was a map or note in writing, under the hands of the proprietors thereof, should be a valid partition, provided such map or note be proved before a Judge of the Supreme Court, and a true copy of such map be filed and

such note recorded. It is thus seen that it was essential, to give validity to the partition, that the map or note thereof should be acknowledged, and a true copy of the map and the note recorded. In that case neither of these things had been done, and a map showing the partition and a covenant to stand by it was offered in evidence, and objected to on the ground that a copy of the map had not been filed, and the note recorded. Judge Kent said: "If the condition on which all such previous partitions were declared valid was not performed, the transaction is left as it was before, and is to be considered independent of the act. The division, and the deed between the proprietors, by which they covenanted to abide by it, and the separate possessions taken in pursuance of that division, were sufficient to sever the tenancy in common, which consisted in nothing but an unity of possession. The parties became concluded and bound by that act, and the map and deed being proved before a competent officer, and possession having gone accordingly, they were admissible as legal evidence in the case." In Jackson *v.* Harder (4 Johns. Rep. 202), decided in 1809, the precise point under consideration was clearly presented, and decided. The head-note is: "A parol partition of land, carried into effect by possession taken by each party of his respective share, according to the partition, will be valid and binding on the parties." In that case three owners of land, purchased by them of two other persons, agreed upon a division of the land, and the plan was chalked out upon a barn. A survey was afterward made agreeably thereto. The parties afterward possessed and built in severalty according to that division. A previous partition by parol had been made, whereby the premises purchased by these three had been assigned to their vendors. Kent, Ch.J., said, in the opinion of the Court: "The validity of the two partitions is not to be questioned. It did not require releases to make the division valid. A parol division, carried into effect by possessions taken according to it, will be sufficient to sever the possessions, as between tenants in common whose titles are distinct, and when the only object of the division is to ascertain

the separate possessions of each. This was so admitted by the Court in Jackson v. Bradt" (supra). In Jackson v. Vosburgh (9 Johns. 270), decided in 1812, the Court say: "There is no doubt but that, where the title is admitted to have been in common, a parol partition, followed up by possession, will be valid, and sufficient to sever the possession." In Jackson v. Christman (4 Wend. 277), decided in 1830, a parol partition had been made of a lot of land among six devisees, the same being divided into six equal parts, and the Court, in the opinion, says : " The question arises whether the surviving brothers, who were parties to this partition, can now deny that Johannes had an absolute estate in fee in his portion, and claim their respective shares of the same as his survivors under the will. The partition was of such interest or estate only as the brothers took under the will of their father. If the will gave them an absolute estate in fee, then the effect of the partition was to sever the tenancy in common in the portion allowed to each, and to give to each an exclusive estate in fee in that portion." In Jackson v. Livingston (7 Wend. 136), it was held that, " when a deed granted 600 acres of land to be surveyed or taken off of a large tract, and, by the terms of an instrument referred to in the deed, the tract was to be divided into lots of one hundred acres each, and an election of lots was to be given to the grantees, which they subsequently made; that though by the deed the grantees became tenants in common with the owners of the tract, the election, followed up by possession, operated as a parol partition." This case was affirmed by the Court of Errors, and reported under the title of Corbin v. Jackson (14 Wend. 619). It was there distinctly held " that a parol partition between the grantees, followed up by actual possession, was valid and binding." The Chancellor regarded the law so well settled that he did not deem it necessary to cite authority, but simply said, at the conclusion of his opinion, which was that of the Court: " The parol partition between her [Madame D'Autremont] and Le Fevre was also valid." The same doctrine was reaffirmed in Ryerss v. Wheeler (25 Wend. 434) ; and in this Court in Baker v.

Lorillard (4 Coms. 257); so also in Mount v. Morton (20 Barb. 123). It is a misapprehension to suppose that these cases turned upon the length of time possession had been taken under the parol partition. No stress is laid upon that circumstance in any of the opinions in the Courts of this State, and that circumstance is only mentioned in one, that of Nelson, Ch.J., in Ryerss v. Wheeler (supra). He there regards the principle as undeniable that a partition by parol is valid, for he says : " It has been repeatedly decided in this Court that a parol partition, carried into effect by possession and occupation in conformity thereto, will be binding between tenants in common whose titles are distinct, and the only object of the division is to ascertain the separate possessions." He then cites the authorities already referred to, and adds : " Here has been an acknowledged division, and occupation accordingly, by the parties, for some thirty years." I do not understand that the learned judge deems this occupation for this length of time, or any particular period of time, an essential element to the validity of a parol partition. It is mentioned, evidently, casually, as an incident or circumstance appearing in that particular case. It is not to be denied that the cases in Massachusetts, Pennsylvania, and Maine hold that no parol partition can be effectual, unless accompanied by deeds from one co-tenant to the other, inasmuch as, in the opinion of the Courts of those States, the Statute of Frauds applies to such cases (Porter v. Hill, 9 Mass. 34; Porter v. Perkins, 5 Mass. 232 ; Snively v. Luce, 1 Watts, 69 ; Gratz v. Gratz, 4 Rawle, 411 ; Gardiner Manufacturing Co. v. Heald, 5 Maine (Greenl.) 381 ; 1 Washb. Real Prop. 450). The learned author on Real Property referred to, after stating the principle of these cases, says : "But although a parol partition between tenants in common may not, for the reason stated, affect the legal title of the several owners, where it is followed by a possession in conformity with such partition, it will so far bind the possession as to give to each co-tenant the rights and incidents of an exclusive possession of his pur-party." He refers to the cases in this State, already adverted to, and also to Piatt v. Hubbel (5 Ohio, 243); Keay v. Goodwin (16 Mass. 1); Slice v. Derrick (2 Rich. 627). In Piatt v. Hubbel (supra)

it appeared that, in 1814, proceedings for partition had been instituted, and commissioners appointed who made partition and their report, but no judgment was entered therein or any further proceedings had; yet possession was taken in severalty in conformity with the partition reported, and improvements made ; and although some of the parties were infants, the division appearing to be a fair one, after the lapse of several years it was held that equity would not disturb it.   The Court say : " It is evident the partition was in fact made between the parties in 1814, which at that time was equal, and that all the adult parties took possession of their repective shares, and ever since [1831] held them in severalty, built upon and improved them, on the faith of its validity.   This Court in Chancery would not disturb a parol partition, originally fair, in which there had been so long acquiescence, and such acts of confirmation."   The acquiescence had then been about seventeen years.   See also Slice v. Derrick (2 Rich. 627), where it was held, in the case of a parol partition, that if actual possession had followed the partition, it would have bound the parties.   And in Snively v. Luce (1 Watts, 69) it did not appear that separate possession was taken in pursuance of the parol partition, and the Court there held an unexecuted parol partition void.

If we recur to the principles of the common law, we shall find that they are in harmony with the rules and doctrine of our Courts.   At common law estates were divided into joint tenancy, coparcenary, and tenancy in common.   An estate in coparcenary always arises by descent, and where the descent is cast upon females only.   A tenancy in common may also be created by descent, as well as by deed or will.   In coparcenary the seizee of the coparcener is generally the seizee of the others, and the possession of one is the possession of all.   Coparceners may sever their possession, and dissolve the estate in coparcenary, by consent or by writ of partition at common law ; and at common law partition was confined to them (Coleman v. Coleman, 19 Penn. 100).  The law of partition in respect to parceners is fully given by Lord Coke, and he calls it " cunning learning " (Co. Litt., tit. Par-

ceners, 163, 175). By the law of this State persons who take by descent under the statute, take as tenants in common, and therefore Daniel and James Fleet held the farm in question as tenants in common. At the common law, if they had been females, they would have taken it as coparceners. But as estates now descend in this State to all the children equally, there is no substantial difference left between coparceners and tenants in common. The title inherited by more persons than one is, in some of the States, expressly declared to be tenancy in common, as in New York and New Jersey; and where it is not so declared, the effect is the same, and the technical distinction between coparcenary and estates in common may be considered as essentially extinguished in the United States (4 Kent's Com. 367). By the common law tenancy in common was created by deed or will, but in this country it may be created by descent, as well as by deed or will; and whether the estate be created by the act of the party, or by descent, in either case tenants in common are deemed to have several and distinct freeholds. Each tenant is considered to be solely or severally seized of his share (id. p. 367). Tenants in common, at the common law, might deliver seizee to each other, but they could not convey to each other by release, because they were not jointly seized (Bro., tit. Feoffment, pl. 45; Butler, note 80 to Co. Litt. 193 a). And Litt. saith (sec. 250, 169 a), "And note, that partition by agreement between parceners may be made by law between them as well by parol without deed as by deed." Note, " A partition between joint-tenants without writ remains at the common law, which could not be done by parol. And so it is and for the same reason by tenants in common. But if two tenants in common be, and they make partition by parol, and execute the same in severalty by livery, this is good and sufficient in law." And it is added in a note: " Between joint tenants there is a twofold privity, viz., in estate and in possession; between tenants in common there is privity only in possession." It is thus seen that at common law, tenants in common might by parol make partition, if the same was executed by livery, for the reason that the only privity between them was that of possession. If that was

severed in a lawful manner they each held their estates in severalty, absolutely. We see, therefore, that at common law it was not necessary to render a partition between tenants in common effectual, that it should be made by a feoffment. The actual delivery of the possession of land, was termed livery of seizin. The actual livery was performed by entry of the feoffment upon the land with the charter as deed of feoffment, and delivering a clod, turf, or twig, or the latch of the door, in the name of seizure of all the lands contained in the deed. The charter itself was not requisite. The fee was capable of being conveyed by mere livery in the presence of the vicinage (Co. Litt. 48, a; 2 Black. Com. 315, 316; Litt. secs. 419, 420 ; Co. Litt. 48 C.). Tenants in common having only privity of possession, they could at common law make partition by parol, if they executed the same in severalty by livery ; in other words, if they made actual delivery in severalty of the possession of the land. This is the equivalent of livery of seizure. That was done in the case at bar, and it is not perceived why at common law the partition in the present instance would not have been good and sufficient in the law. But it is conceded that a partition by parol between coparceners is valid and binding ; and as in this country, where the estate comes to two or more by descent, no substantial difference is left between coparceners and tenants in common, it follows that what would be lawful for coparceners to do, tenants in common may do.' Cessante ratione cessat lex. As tenants in common have only privity of possession, and can sever that by parol, it logically follows that, when such severance is made by parol, and the same is executed by the delivery of the possession, each tenant in common will thereafter hold his part assigned in severalty in fee. Such at any rate has been the law in this State for the last fifty years, and we see no reason for overturning it. But if this was not so under the circumstances appearing in this case, a Court of Equity would not permit this partition to be disturbed, for two sufficient reasons :

1. It has been in part executed.

2. Acquiescence on the part of both parties for now over twenty years.

Allnatt on Partition, at p. 20, says : It seems also that a parol agreement for partition by joint tenants in fee, if in part executed, and long acquiesced in, will be enforced in equity (2 Vern. 233). Equity decreed that a partition by parol, even by tenant in tail, ·shall bind the issue, on the ground of their being in possession of the lands which come in recompense.

In Ireland *v.* Rittle (1 Atk. 541), Mary and Susan Jackson were tenants in common, and intermarried, and their husbands, by mutual agreement, made partition, by which each of them agreed to take one part of the premises, which they did, and entered into possession. And Susan then held the share of the premises so divided, by virtue of such partition, and Mary enjoyed her part until her death. The bill was brought, among other things, to confirm the division, and that the Defendant Susan be restrained from proceeding at law against the Plaintiff to compel a new partition. Lord Chancellor Hardwicke said : " I do admit a parol agreement of long standing, acknowledged by all the parties to have been the actual agreement, and accordingly put in execution,will be established by this Court, where it appears that the persons who made such agreement had a right to contract." But he says : " As that agreement was made by the two husbands, it could by no means bind the inheritance of the wives," and for this reason he held the Defendant Susan not bound by the agreement. In Whaley *v.* Dawson (2 Sch. & Lef. 367), where two tenants in common, and one was an infant, and by his guardian joined with the other tenant in common in making partition by parol, and the infant, after attaining twenty-one years, granted leases of the entirety of his allotments and acquiesced for seventeen years, and afterward filed a bill for partition, Lord Manners refused to decree one, on the ground that the Plaintiff, by his own acts, had ratified the partition already made, and that the acquiescence, as well as certain improvements made by the lessees of the other tenants in common, on the faith of their title being in severalty, raised an equity which would estop the Court from interfering to disturb what had been done ; and that the Plaintiff had no right to more than a conveyance, in pursuance of the partition already

made.  We have, in the case at bar, the same controlling elements, viz. :

1.  Ratification of the partition by both parties.

2.  Acquiescence therein by both.

3.  Improvements made on the faith thereof; and the important fact in addition, that one of the tenants in common conveyed the part assigned to the other, and that other prepared and requested a conveyance to him of the part assigned to him, and which was accidentally omitted to be executed.

To rebut the inference of acquiescence on the part of Daniel Fleet in this partition, the Appellant gave evidence of the declarations of Daniel, made after the death of his brother James.  I have examined them carefully, and so far from showing non-acquiescence in the partition, the inference to be drawn from them is clearly in affirmance of it.

In the first place, there is an entire absence of any repudiation or dissatisfaction with the partition.

2.  It does not appear that Daniel at any time set up any claim to the part of the farm assigned to James, or pretended or alleged that he had, or claimed, any interest in it.

3.  In all their conversation he spoke of the part of the farm occupied and possessed by him as his own in severalty.

4.  He but stated the truth when he said to one of James' sons : "I have given your father a deed for his part, but have received none in return [for my part], and this consequently gives you [or your, as heirs of your father] a legal right to the part that I occupy."  Joseph, one of James' sons, then asked him if he wished it to be so, and he said " Yes," and requested Daniel to make a will. His reply was, " Whether I make a will or not, you [that is, the heirs or sons of James] are entitled to half of this I occupy."

This evinces clearly what was in the mind of Daniel, viz., that he owned the farm occupied by him ; that having no children, if he should die intestate one-half thereof would go or descend to the sons of his brother James.    And he doubtless had in his mind, what he could not fail to know, that the other half would descend to his sister, the Plaintiff, though he did not express it.   It would

have been nevertheless so, if the sons of James had given a quit-claim deed to Daniel as they proposed, and which he declined to receive. It would have been an idle ceremony, as he must have plainly seen. They were estopped from setting up any interest, as the heirs of their father, in the portion of the farm assigned on the partition to Daniel, and if Daniel died intestate, as he clearly proposed to do, the three brother sons of James would take as his heirs, as Daniel himself expressed it, " to half of this I occupy." A deed from them to Daniel would not have changed the descent ; and there was no significance, therefore, in the fact that Daniel, on several occasions, declined to receive one from them. Their rights, as heirs of Daniel, would have been the same if they had executed and delivered such deed, on the hypothesis that after the death of their father, James, they were entitled to and had some interest or share in the part of the farm assigned to Daniel in the partition.

The case in Willes, 248, of Johnson v. Wilson, is cited by the Appellant's counsel, as establishing the position that a parol parti-tion is void by the Statute of Frauds. It was an action of cove-nant upon an award, where the arbitrators made an award that a partition should · be made, and did not direct that the parties should execute conveyances ; held, for this defect, that the award was bad, and that no action could be maintained on the covenant for not performing the award. Ch.J. Willes said : " Since the statute of 29 Car. 2 no conveyance can be but by deed, a proper conveyance is now become necessary ; and for this reason the award is incomplete and not good." But a Court of Equity never permits the Statute of Frauds to be set up as an instrument to per-petrate a fraud. Where one party has executed his part of the agreement in the confidence that the other party would do the same, it is obvious, if the latter should refuse, that it would be a fraud upon the former to permit such refusal to prevail. It is an established rule in equity that a parol agreement in part performed is not within the province of the Statute of Frauds. The case of Ryan v. Dix (34 N. Y. 307), and cases there cited, are conclusive upon this point, and preclude Daniel Fleet, or those claiming un-

der him, from setting up the Statute of Frauds to avoid this partition.

In whatever respect, therefore, it be urged, the partition made between James and Daniel is valid and binding.

And the judgment of the Supreme Court appealed from should be affirmed, with costs.

Grover, J.—It is not necessary to the determination of the present case to decide the question whether a parol partition made by tenants in common, followed by an exclusive possession, and claim of title by each of the share assigned to him, for a period less than twenty years, will sever the tenancy in common, and give to each tenant the entire title of the portion so assigned, to the exclusion of the others, for the reason that the judgment appealed from, determining that Daniel Fleet was the sole owner of the lands described in the complaint, at the time of his death, should be affirmed although it should be held that such particular occupancy and claim did not confer such title. The referee finds that Daniel and James Fleet owned a farm as tenants in common, embracing the land in question; that they, by parol, partitioned said lands between them, and established a boundary. That thereafter each occupied the portion allotted to him in severalty; that this occupation continued for some years; that Daniel gave to James a deed of the portion allotted to him, but did not receive a deed from James of his share. The case leaves no doubt that it was agreed that one should be given. The referee further finds that, after the partition, Daniel expended four thousand dollars and upwards in the erection of a house and other improvements upon his share. That these facts gave Daniel the right to enforce the agreement for partition made with James, is a proposition too clear for argument. It only remains to inquire whether, having acquired the right, he did anything to deprive himself of it. It appears that at one time he called upon James and his wife for a deed; that his right thereto was recognized by them, but the execution was deferred on account of the illness of the wife. Some time after James and his wife proposed to Daniel

to give the deed, to which he replied that he had changed his mind, and did not want it. This declaration, unaccompanied by any agreement or consideration, surely could not deprive Daniel of his property, held either legally or equitably. It further appears that, after the death of James, Daniel told his heirs that he had never received a deed of the land, and that they had as much interest in it as he had ; that some of them offered to quit-claim to him, and he declined receiving the deed. While these facts would preclude him or his heirs from claiming title by adverse possession, after the lapse of the requisite time, they would not cancel or divest him of his title to the property. The counsel for the Appellant insists that the referee erred in finding the fact that Daniel had given a deed to James. Having taken an exception to this finding, the question is presented to this Court, whether there was any evidence authorizing it. It is an error of law to find a fact without any evidence, which, upon proper exceptions, may be reviewed and corrected in this Court; but whether the finding is against the weight of evidence cannot be inquired into here. An examination of the evidence has satisfied my mind, that not only was there evidence in support of the finding, but that the referee was entirely correct therein.

The judgment appealed from should be affirmed, with costs.

All concur.

Affirmed.