MARY E. SANGER et al., Respondents, *v.* JOHN C. MERRITT, Appellant.

*13 /~6 / 5.*

In an action to recover possession of certain lands situated in the town of Huntington, Long Island, it was conceded that the town was formerly the owner of the lands in question. Plaintiff offered in evidence the records of the town showing that in 1792, the holders and proprietors of lands in the town met and appointed five trustees who were to act for them in respect to said lands, and who, in 1793, made an allotment of the lands in dispute to H.; that in 1797 the trustees of the township met and by resolutions signed by the president of the board, attested by the seal of the township, ratified the said allotment. These records were received under the objection that sufficient foundation had not been laid for their admission as ancient documents. *Held,* untenable.

The objection was also made that they were insufficient to transfer the title to real estate. *Held,* that as at the time of the allotment the provisions of "the act for the prevention of frauds" (§ 9, Chap. 44, Laws of 1787) were in force giving to all attempted conveyances of real property by

livery of seizin or by parol, the effect simply of leases or estates at will only, the allotment vested no legal title in H.; also that his title could not be sustained on the theory that he was one of the proprietors of the land, and that the allotment vested the legal title in him through a partition between the owners, as there was no evidence that he was one of the proprietors, and the proceedings were not in accordance with the statute then regulating partition; that as there was no evidence that H. had ever entered, or claimed to own, or had exercised any authority over the premises, the allotment could not be regarded as a valid parol partition of the land; and that as plaintiffs failed to establish a valid title to the premises in H. through whom they claimed, they could not recover. The history of the method of acquiring title to town lands in the New England states and on Long Island given.

(Argued February 24, 1890 ; decided April 15, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 13, 1886, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court, and affirmed an order denying a motion for a new trial.

This action was begun December 7, 1881, by Henry Sanger to recover possession of 259 acres of land in the town of Baby-lon (formerly Huntington), with damages for the wrongful withholding thereof from November 15, 1875.

The plaintiff alleged that he was the owner in fee and entitled to the immediate possession of the land. The defendant, in his answer, denied all of the allegations in the complaint, except the allegation that he was in possession, and alleged "that he has for more than twenty years last past been in the peaceable, undisturbed and lawful possession of said premises; and that he is the true, lawful and sole owner of said premises, and has been for more than twenty years last past."

The action was first tried at the Suffolk Circuit in April, 1882, when the defendant had a verdict, but the plaintiff paid the costs and took a new trial under the statute, which was had at the October Circuit, 1883, when the defendant again recovered a verdict, on which a judgment was entered, which was reversed and a new trial granted by the General Term of the second department in March, 1885. (35 Hun, 669.) The

case was again tried at the February Circuit, 1886, at which the jury was directed to find that the plaintiff had been the owner of the fee of the land in dispute since June 21, 1871, and entitled to the possession thereof, and the damages, by agreement, were assessed at $50. A motion for a new trial on the minutes was denied and a judgment entered. On January 15, 1886, the plaintiff died; the present plaintiffs succeeded to his interest and were substituted as parties plaintiff in his stead.

*Thomas Young* for appellant. The defendant showed title in himself, or at least he was entitled to have the cause submitted to the jury upon that question, under appropriate instructions from the court. (Code Civ. Pro. § 370 ; Fiero on Spec. Act. 29, 33, 34 ; *People* v. *Van Rensselaer*, 9 N. Y. 329 ; 3 Wait's Act. & Def. 29, 30 ; *Peck* v. *Newton.* 46 Barb. 173, 175 ; *Moore* v. *Spellman*, 5 Den. 225 ; *York* v. *Allen*, 30 N. Y. 104 ; *Jackson* v. *Meyers*, 3 Johns. 388 ; *Monroe* v. *Merchant*, 28 N. Y. 9, 44 ; *Thompson* v. *Burnhans*, 61 id. 52.) The plaintiff showed no title in himself to the premises claimed; he must recover, if at all, on the strength of his own title. (Code Civ. Pro. § 368 ; 3 Washb. on Real Prop. 194, 198 ; *Trustees, etc.,* v. *M. B. O. Co.*, 116 N. Y. 1 ; 1 Washb. on Real Prop. 719.) The three deeds under which plaintiffs claim are all contrary to the following statutes and are void. (3 R. S. 2516, § 6 ; Id. 2196, § 147 ; *Pepper* v. *Haight*, 20 Barb. 430, 438 ; *Dawley* v. *Brown*, 79 N. Y. 390 ; *Crary* v. *Goodman*, 22 id. 170, 176 ; *Towle* v. *Remsen*, 70 id. 303, 317 ; *Christie* v. *Gage*, 71 id. 189 ; *Howard* v. *Howard*, 17 Barb. 663 ; *Sands* v. *Hughes*, 53 N. Y. 287 ; *Finlay* v. *Cook*, 54 Barb. 27.) The plaintiffs are not entitled to maintain this action, because neither they nor their grantor were seized or possessed of the premises within twenty years next before its commencement. (Code Civ. Pro. § 365.)

*Gherardi Davis* for respondent. The plaintiff established a good and continuous chain of title. (*Trustees, etc.,* v. *M. B. O. Co.*, 116 N. Y. 1 ; *Robins* v. *Ackerly*, 91 id. 98 ; *Jackson*

v. *McCall*, 10 Johns. 377; *Jackson* v. *Lamb*, 7 Cow. 431; *Russell* v. *Schuyler*, 22 Wend. 277; *White* v. *Loring*, 24 Pick. 319, 322; *Melvin* v. *Comrs.*, 17 id. 255, 262; *Mayor, etc.*, v. *Horner*, Cowp. 102, 112.) The Hartt lot was separate and distinct from the Conklin lot, and the fact that the conveyance to the defendant of the entire tract was made in one piece cannot destroy this distinction; adverse possession of the Hartt lot would have had to be particularly proved. (*Bailey* v. *Carleton*, 12 N. H. 9; *Woods* v. *M. C., etc., Co.*, 84 Ala. 560; *Thompson* v. *Burhans*, 61 N. Y. 54.) There is no proof of any such use of the premises for fuel as is within the meaning of the statute. (*Miller* v. *L. I. R. R. Co.*, 71 N. Y. 383; *Machin* v. *Geortner*, 14 Wend. 239; *Thompson* v. *Burhans*, 61 N. Y. 54, 69; *Jackson* v. *Woodruff*, 1 Cow. 276; 79 N. Y. 93; *Wheeler* v. *Spinola*, 54 id. 377; *Miller* v. *Downing*, 54 id. 631; *Price* v. *Brown*, 101 id. 669; *Bliss* v. *Johnson*, 94 id. 235.) There was, furthermore, an entire failure of proof of continued occupation of the land in question for a period of twenty years. (*Bliss* v. *Johnson*, 94 N. Y. 235, 242; Sedg. & Wait on Title, § 738; Code Civ. Pro. § 369; *Miller* v. *Platt*, 5 Duer, 272; *Cleveland* v. *Crawford*, 7 Hun, 616, 620; *Finley* v. *Cook*, 54 Barb. 9; *Trustees, etc.*, v. *Kirk*, 68 N. Y. 459.) The court correctly refused to submit to the jury whether the deed from Wood to Sanger was not void, for the reason that the premises described therein were, at the date thereof, in the actual possession of the defendant, he claiming them under title adverse to that of the plaintiff. (Code Civ. Pro. § 500; *Crary* v. *Goodman*, 22 N. Y. 170; *Sands* v. *Hughes*, 53 id. 287–289; *Dawley* v. *Brown*, 79 id. 390.) It is well established that a direction by a judge to the jury, to find a verdict for one of the parties, is always proper, when a contrary verdict would be set aside upon the ground that it was against evidence. (*Dwight* v. *G. L. Ins. Co.*, 103 N. Y. 341.)

Follett, Ch. J. The litigants agree that in the seventeenth century the town of Huntington, through the trustees

for the freeholders and commonalty thereof, succeeded to the rights of the British Crown and of the Indians, and became the owner of the land in dispute and of the adjoining lands. This town was settled from New England and it sent delegates to, and was governed by the General Court of Connecticut until December 1, 1664, when Long Island was adjudged to belong to New York by a Royal Commission and the Governor and Commissioners of the General Assembly of Connecticut (3 Colonial Hist. of N. Y. 27, 197; Smith's Hist. of N. Y. 52), and March 1, 1665, two deputies from every one of the towns on Long Island assembled at Hempstead, and acknowledged the authority of the colony of New York. (Smith's Hist. of N. Y. 55; 3 Colonial Hist. of N. Y. 91.) It was a custom of the early inhabitants of New England, for several persons to acquire and settle a tract of wild land and erect it into a township, under the form of town government peculiar to that section. Part of the land was allotted to the original proprietors, which was thereafter held in severalty, though sometimes with restrictions in regard to alienation, and the undivided lands were held and managed by the trustees for the benefit of all. Frequently additional lands were acquired by the town in the name of the trustees, as was done by the town of Huntington. From time to time parcels of the lands held in common were alloted to such new settlers as were admitted into the township, upon such terms as were agreed upon, and the allotments entered upon the records of the township. In some of the New England states lands so held could be partitioned by vote, and perhaps by vote vested in a new settler, without a conveyance (*Coburn* v. *Ellenwood*, 4 N. H. 99; *Corbett* v. *Norcross*, 35 id. 99; *Folger* v. *Mitchell*, 3 Pick. 396); but it is unnecessary to ascertain the law of Connecticut on this subject, for Huntington became a part of New York long before the allotment to Hartt was made.

It appears by the records of the town of Huntington that the holders and proprietors of lands (including those in question) met July 28, 1792, and unanimously appointed as trustees, five persons, who, or the major part of them, were

to act for the proprietors in respect to such lands. The following is an extract from the records of the town: ·

" April 12, 1793.

" Laid to John Hartt one other piece of land south of the single pine on the south side of land laid out to the heirs of Israel Conklin, deceased, or to James Pearson, if he proves his title, running from thence southerly along the road of the said purchase, 216 rods; then west on both sides of the New Highway, which is fourteen chains from the old road of the purchase containing 259 acres laid out by us."

| | |
|---|---|
| "Abijah Ketcham, | JOHN HARTT, |
| "Ebenezer Hart, | "*Surveyor.* |
| "Zebulon Ketcham and | |
| "Silas Sammis." | |

This resolution, or allotment, is signed by four of the five trustees appointed July 28, 1792.

A plat of the land so laid out was entered upon the record.

February 27, 1797, the trustees of the township met, and by a resolution signed by the president of the board, attested by the seal of the township and entered in the town records ratified this allotment of land.

Upon the trial the defendant objected to the admission of these records in evidence, upon the grounds: (1) That sufficient foundation had not been laid to render them admissible as ancient documents; and (2), that they were insufficient to transfer the title to real estate. These records were authenticated by the seal of the township, and several witnesses testified that they were its records; no witness testified to the contrary, and the evidence in respect to their custodians for as long a period as the memory of the witnesses ran, raised no presumption, nor even a suspicion that the records were not genuine. The first ground of the objection was not tenable. (*Tolman* v. *Emerson*, 4 Pick. 160; *Goodwin* v. *Jack*, 62 Me., 416; *Proprietors* v. *Rogers*, 1 Mass. 159; *Rust* v. *Boston Mill Corporation*, 6 Pick. 158, 165; *King* v. *Little*, 1 Cush. 436, 440; Whart. on Ev. §§ 198, 643.)

Did the allotment described in the records transfer the title to the land from the township to John Hartt? But for the statutes shortly to be considered, the court might, perhaps, presume that possession was delivered at the time of the allotment, and hold a transfer so made sufficient to vest the legal title in John Hartt, for prior to June 24, 1677, when the English Statute of Frauds took effect, English land was transferrable by word of mouth, with livery of seizin. (2 Black. Comm. 297; 1 Steph. Comm. [8th ed.] 502, 505; Williams' R. P. [12th ed.] 147; *City of Boston* v. *Richardson*, 13 Allen, 146; *Spurr* v. *Bartholomew*, 2 Met. 479; *Rust* v. *Boston Mill Corporation*, 6 Pick. 158.) The third section of this statute (29 Car. II. chap. 3) provided: "III. And moreover, that no leases, estates or interests, either freeholder or terms of years, or any uncertain interest, not being copyhold or customary interest, of, in, to or out of any messuages, manors, lands, tenements or hereditaments, shall at any time after said four and twentieth day of June, be assigned granted or surrendered, unless it be by deed or note in writing, signed by the party so assigning, granting or surrendering the same, or their agents thereunto lawfully authorized by writing, or by act and operation of law."

It is unnecessary to consider whether this statute was in force in the colony of New York, and prevented land from being transferred orally, or by parol, with livery of seizin (1 Reed Stat. Fr. § 2; 1 R. L. 1813, 526, § 30, note), for previous to this allotment an act entitled "An act for the prevention of frauds" was passed (Chap. 44, Laws of 1787; 2 J. & V. 88; 1 R. Acts, 79; 1 R. L. 78), the ninth section of which provided:

"IX. And for the prevention of many fraudulent practices which are commonly endeavored to be upheld by perjury and subornation of perjury: Be it enacted by the authority aforesaid, That all leases, estates, interest of freehold, or terms of years, or any uncertain interests of, in, to or out of any messuages, manors, lands, tenements or hereditaments, made or created, or hereafter to be made or created, by livery and seizin only, or by parol, and not in writing, and signed by the

parties so making and creating the same, or their agents there-unto lawfully authorized by writing, shall have the force and effect of leases, or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect; any consideration for making any such parol leases, or estates, or any former law or usage to the contrary notwithstanding. Except nevertheless, All leases not exceed-ing the term of three years, from the making thereof, where-upon the rent reserved to the landlord during such term, shall amount unto two-third parts, at the least, of the full improved value of the thing demised."

Nor can the claim that John Hartt acquired the title be sup-ported on the theory that he was one of the proprietors of the land, and that the allotment vested the legal title in him through a partition between the owners, because there is no evidence that he was one of the proprietors, or even a freeman of the town prior to the date of the allotment. Had he been one of the proprietors, it is difficult to see how he could have acquired a legal title through a partition, for the proceedings disclosed by the record were not in accordance with the statute then in force, regulating partitions. (1 Van Schaack, 403, 416, 515; 2 L. & S. 237, 256; 1 J. & V. 201.) Nor would the allotment have been a valid parol partition unless the allottee had taken exclusive possession of the land. (*Wood* v. *Fleet*, 36 N. Y. 499; 1 Wash. R. P. 430, 12.) There is no evidence that he ever entered on, claimed to own, or exercised the slightest dominion over any part of these premises. At an early day he removed from Suffolk to Ontario county, where he died in 1831, leaving a will, in which no reference is made to these lands. No part of the disputed premises has ever been cleared except about three acres in the north-east corner, nor has it ever been inclosed, built upon or improved in any way. The clearing is shown to have been done by persons claiming under the defendant's chain of title; and so it cannot be presumed that it was done by any of the persons through whom the plaintiffs claim. This brings us to the conclusion that the plaintiffs failed to show that John Hartt ever held the

legal title to the land in dispute.    There is no evidence that the persons through whom the plaintiffs claim were ever in possession of this land, or any part of it.    The plaintiffs having failed to establish a legal title, the court erred in refusing to grant the defendant's motion for a nonsuit.

Judgment should be reversed and a new trial granted, with costs to abide the event.

All concur except Brown, J., not sitting,

Judgment reversed.