HENRY N. BEERS, Respondent, *v.* HENRY G. HOTCHKISS and Another, Respondents, Impleaded with HILAIRE E. CAMPBELL and Another, Appellants.*

Second Department, October 24, 1930.

*Joseph Steven Frank,* for the appellants.

*Lucius H. Beers* [*John R. Vunk* with him on the brief], for the respondents.

* Affg. 135 Misc. 796.

TOMPKINS, J. Defendant Campbell and his wife appeal from an interlocutory judgment in partition which decrees that the plaintiff and defendant Hotchkiss are the owners in fee simple as tenants in common of the premises described in the complaint and adjudging that the appellants have no title thereto or interest therein. The premises which are the subject of the action consist of about 500 acres of uninclosed, uncultivated and unimproved lands in the town of Southampton, Suffolk county, N. Y., covered with scrub oak and pine and known as lots numbers 31 to 35, inclusive, in the division of land in said town known as the last division of the Quogue purchase. The plaintiff claims to be the owner of an undivided one-third interest in said lands by virtue of a deed from defendant Hotchkiss and wife dated July 30, 1928, while defendant Hotchkiss asserts ownership of an undivided two-thirds interest in said premises, having derived title to the entire property from one Shaw and wife by deed dated May 9, 1928.

It appears that Southampton was settled in about the year 1640 by English people who came from Lynn, Mass., and that each contributed £150 to constitute a common fund to be used for the purchase of lands. After Charles II had granted New York, including Long Island, to his brother, the Duke of York, in 1664, certain patents and grants were made by the government of Great Britain, one of which was made in 1676 to Edmund Andrus, Governor General of the Province of New York, and one in 1686 to Dongan, Governor General of said province, and thereafter charters of Southampton were granted by which title to these common lands in the town of Southampton, including the lands described in the complaint, was vested in the trustees of the freeholders and commonalty of the town of Southampton as a municipal corporation for the benefit of and to be allotted to the inhabitants of said town. Thereafter, portions of said lands were allotted to various individuals and entries were made in the records of said town of such allotments. It appears from said records that, in the year 1782, lots 31–35, being the premises described in the complaint, were drawn by or set aside for certain persons by surveyors and viewers who will be hereinafter referred to, but were not allotted by the trustees of the freeholders and commonalty, and there is no record or proof of any written instrument of conveyance of said lots and no evidence of the allottees ever having occupied or been in possession thereof; and it is not possible, by any connected chain of title, to trace the interests of the several persons to whom said lots were allotted, and there is no record of any conveyance in writing of said lots to any person prior to the year 1882, nor is there any proof that the said lots were occupied

by or in the possession of any person, or that they were inclosed or improved at any time down to May 9, 1928, when defendant Hotchkiss became the owner of said premises by a written conveyance executed on that day from one Charles H. Shaw and wife. The Legislature of the State of New York, by chapter 155 of the Laws of 1818, vested the title to all of the said common lands, legal title to which had not been transferred by the said town of Southampton or the trustees of the freeholders and commonalty of said town, in the trustees of the proprietors of the undivided lands of the town of Southampton, and said trustees were given power to sell said lands.

By a deed dated November 7, 1882, and recorded in liber 269 of Deeds, page 161, the said trustees of the proprietors of the undivided lands of the town of Southampton conveyed the premises described in the complaint and known as lots 31–35 to one Henry W. Maxwell, and by a series of intermediate conveyances, and an unbroken chain, title to the premises became vested in said Shaw in the year 1906, and he continued to be the owner thereof until he conveyed the premises to the defendant Hotchkiss, who, on July 30, 1928, by a duly executed and recorded deed, conveyed an undivided one-third interest in said premises to the plaintiff.

The learned referee found and the proofs support his finding — indeed there is no evidence to the contrary — that the only written conveyance of the premises described in the complaint by the town of Southampton or by the trustees of the freeholders and commonalty of said town, or by the trustees of the proprietors of the undivided lands of the town of Southampton, or by any allottee of said premises, was the deed to Maxwell in 1882, which is the source of the title now claimed by the plaintiff and the respondent Hotchkiss, except by an attempted conveyance of said premises to the appellant Campbell, by a deed dated June 20, 1928, from what purported to be " the trustee of the Proprietors of the common and undivided lands " of the Quogue purchase, the grantor in said deed claiming to be the successor of the grantor of the same premises to the said Maxwell in the year 1882.

The appellant's claim of title is based primarily upon this deed of June 20, 1928, and a claim of ownership by adverse possession. He stated in his bill of particulars that prior to the deed from Shaw to the defendant Hotchkiss he had no written instrument of title to said premises, and rested his claim upon actual possession.

The claim of the appellants Campbell with respect to the alleged title of the plaintiff and of the defendant Hotchkiss is that the trustees of the proprietors of the undivided lands of the town of Southampton who conveyed the premises to Maxwell in 1882 had

no title to said lands and no power to convey because the premises had previously, in 1782, been allotted by the trustees of the freeholders and commonalty of the town of Southampton, and that the survey, division, drawing and allotment of that part of the former town commonage known as Quogue purchase, last division, 1782, as entered in the town records, took the title to the *locus in quo* out of the town, and in support of their contention make two major points:

1. " Because these divisions and allotments were an established custom from the beginning of colonial history, received statutory sanction, though none was necessary, by Chapter 2 of the Laws of 1691 of the Colonial Assembly."

2. " Because Chapter 70 of the Laws of 1804, relating solely to the Town of Southampton, recognized and confirmed the titles acquired through the divisions and allotments and authorized informal partition without deeds between the allottees or their successors, ' any law, usage or custom to the contrary notwithstanding.' "

The appellant introduced an entry in the town records which is a report of two surveyors or viewers which recites that in 1782 they were appointed by the trustees to lay out the Quogue purchase, last division, and that they accordingly laid out the tract in lots or strips numbered from 1 to 39.

There is no proof in the record of any allotment by the trustees of any of the land in question to any individual or to any group of persons as tenants in common. All that the records show is the report of these surveyors or viewers in 1782, and that following their report there was a meeting of the proprietors and a drawing of lots numbered from 1 to 39, but there is no record of any allotment or transfer of any of these lands by the trustees, and if there had been allotments the title in the allottees would not have been good without a deed or written transfer.

Under section XXXV of the Constitution of the State of New York, adopted in 1777, it was provided " that such parts of the common law of England, and of the statute law of England and Great Britain, and of the acts of the Legislature of the Colony of New York, as together did form the law of the said Colony on the 19th day of April, in the year of our Lord one thousand seven hundred and seventy-five, shall be and continue the law of this State," so that the English Statute of Frauds (29 Car. II, chap. 3) was made a part of the common law of the State of New York in 1777 and five years before the alleged allotments which the

appellants claim included the lands described in the complaint, and, at the time of the adoption of the State Constitution in 1777, chapter 8 of the Laws of 1684 of the General Assembly of the Colony of New York, more correctly known as chapter 8 of the Second Session of the First General Assembly of the Colony of New York (1 Col. Laws of N. Y. [Comp. Stat. Rev. Comm.] 148, chap. 8), passed October 23, 1684, was in force and its provisions were similar to the English Statute of Frauds, as both required a deed in writing subscribed by the grantor to pass title to real property, and it was not until 1828, effective January 1, 1830, that these statutes were repealed in connection with the general revision of the New York statutes into the Revised Statutes, although the English statute seems to have had no force or effect in this State since May 1, 1788, but there has been no substantial change in the Statute of Frauds relating to the transfer of real estate. (See Laws of 1787, chap. 44, §§ 9–11; 1 K. & R. 79, §§ 9–11; 1 R. L. 78, §§ 9–11; Laws of 1828 [2d Meet.] chap. 21, § 1, subd. 16; Id. §§ 3, 4, 8, 9; 2 R. S. 134, § 6; 2 R. S. 135, § 8; Real Prop. Law of 1896, §§ 207, 224; Real Prop. Law of 1909, §§ 242, 259.)

It seems to me that the alleged " allotments " which consisted merely of the proprietors themselves, by lot or otherwise, drawing and dividing among themselves lands the title to which was in the town, in the absence of a transfer in writing or any transfer by the town trustees, did not vest legal title in the so-called allottees of said lands.

In *Sanger* v. *Merritt* (120 N. Y. 109) the effect of similar " allotments " was considered and they were declared to be invalid.

In *Sanford* v. *Lindley*, an action involving the validity of an " allotment " in the town of Huntington, L. I. (although in that case it had been expressly ratified by the town trustees), Mr. Justice JAYCOX at Special Term held that for more than two hundred years the crown charters made to the town of Huntington vested title to all lands in the town, and that in March, 1872, the New York Legislature (Laws of 1872, chap. 105) divided the town of Huntington and created the town of Babylon, which took the southerly part of the land of the old town of Huntington, and afterward the southerly part of the town lands became vested in the town of Babylon; and that on the 29th of April, 1873, the trustees of the town of Huntington made a deed to the trustees of the town of Babylon conveying the lands in the southerly part of the town, and the allotments in that case to one Hart were held to be invalid because the written instruments relating thereto " were insufficient to transfer title to real estate " and because the property was wild, uncultivated and unfenced woodland that was

unoccupied and of which there had been no actual possession of any person within the memory of living persons. The decision of the Special Term in that case was unanimously affirmed by this Appellate Division (179 App. Div. 940).

It is clear, therefore, that the title to the premises which are the subject of this action remained in the town of Southampton until the conveyance to Maxwell in 1882 by the trustees of the proprietors under the power vested in them by chapter 155 of the Laws of 1818.

In view of the appellants' claim of title by adverse possession, I call attention again to the fact that the premises described in the complaint, until the spring of 1928, were unoccupied and were wild, unfenced and uncultivated lands. Early in 1928 the appellant took possession of a part of said premises and cleared six or ten acres, beginning the work April twenty-fifth of that year and continuing such work for two or three months, and in July erected thereon a hangar which was the first structure ever put upon the premises, and this was two and one-half months after the deed to respondent Hotchkiss. At that time he had no written instrument purporting to give to him any interest or right in or to said premises, and he had not been in possession of any part thereof prior to the month of March, 1928, nor had any other person occupied or been in actual possession of said premises at any time prior thereto. On June 20, 1928, the appellant received what purported to be a deed from the trustee of the proprietors of the undivided land of the town of Southampton — as already observed, the grantor in that instrument claiming to be the successor of the trustees who conveyed the same premises to Maxwell November 7, 1882. This deed conveyed nothing to the appellants.

On the question of adverse possession, Vail testified that about forty years ago he cut trees from the premises in question for one Samuel Griffin, but the witness was very indefinite in locating the land where the cutting was done and there is no proof that Griffin ever had title to the premises in question.

There are on record in the office of the clerk of Suffolk county deeds made sixty or more years ago purporting to convey part of the land in question to Samuel Griffin, Samuel A. Smith and John J. Anderson, but the referee found that these deeds did not convey any part of the premises described in the complaint, and that there was never any entry upon or possession of said lands by any of these three alleged grantees, and these findings are justified by the undisputed evidence.

The answer to the amended complaint alleged and the proof shows that on October 22, 1928, one Percy P. Anderson, one of

the descendants of the said John J. Anderson, made a contract to convey to the appellant all of his interest in said lands, but said contract was never consummated and by its terms expired December 31, 1928, so that the appellant has acquired no interest in the lands in question under said contract with Anderson, even assuming that John J. Anderson did have an interest in said lands.

The appellant offered in evidence various deeds purporting to have been made more than fifty years ago and pretending to convey parts of these lands to various grantees, but it was not shown that the grantors in any of those deeds were the owners or were ever in possession of the premises in question.

In *Miller* v. *Long Island Railroad Co.* (71 N. Y. 380) the court held in substance that where the land has not been occupied, improved or inclosed, and reliance is placed solely upon paper title, the proof must be of a chain of title from the original patentee or donee.

A deed from a person not in possession, or not shown to be the owner, establishes no title.

The possession unaccompanied by paper title, requisite to furnish the presumption of ownership sufficient to maintain the action, must be actual.

In case of land unoccupied, unimproved and uninclosed, such possession may be made out by showing that the lot is kept as, and is a woodlot of suitable size for an improved farm, and that the owner of the farm has habitually for some years cut thereon his firewood, saw logs, fencing and building timber.

Evidence of merely occasional entries at long intervals upon the lot, where it is not parcel of an improved farm or connected with one, is not sufficient to establish the requisite possession.

Following the rule in the *Miller* case for proving title to unoccupied lands of this character, the title of the plaintiff and the defendant Hotchkiss has been traced from the original patentees, and in the absence of such possession as would be presumptive evidence of title (and no such possession has been shown) plaintiff and defendant Hotchkiss hold the record title and that disposes of all questions of possession unless that possession is adverse and has continued for more than twenty years. Possession is always presumed to follow the record title and the true owner is constructively in possession of land to which he holds title, unless such lands are " in the actual hostile occupation of another under a claim of title; and this rule is still more imperative in the case of wild and uncultivated tracts or lands which are not legally susceptible of actual occupation and cultivation. (*Doe* v. *Thompson*, 5 Cow. 371; *Thompson* v. *Burhans*, 79 N. Y. 99.) This possession is deemed

to continue until there is an actual disseizin and expulsion of the true owner from the land, and when such dispossession terminates, if it does terminate within twenty years, the possession is, by construction of law, considered as having again returned to him who holds the legal title." (*Bliss* v. *Johnson*, 94 N. Y. 235.)

My conclusions are that the appellants have no legal interest in the lands described in the complaint, and that the plaintiff and defendant Hotchkiss, respondents, are the owners of said premises as tenants in common and that the interlocutory judgment appealed from should be affirmed, with costs to the respondents.

RICH, CARSWELL and SCUDDER, JJ., concur; LAZANSKY, P. J., concurs in result.

Interlocutory judgment unanimously affirmed, with costs to respondents.