[2] If the plaintiff would have to prove a selection and demand within a stated or a reasonable time in order to recover, an allegation to that effect would doubtless be essential to a statement of her cause of action. But this is not the case of an executory contract of purchase and sale, as was the case of Pope v. Terre Haute Car & Manufacturing Co., 107 N. Y. 61, 13 N. E. 592, also relied upon by the learned court at Special Term. The defendant received the consideration for which he agreed to procure a conveyance from a third party, or to pay in lieu thereof the sum of $3,500. A selection of the 15 acres to be conveyed had to be made before the defendant could be put in default, but a failure to make the selection within a reasonable time or within a definite time, if one was stated in the contract, would not necessarily defeat the right of the plaintiff or her assignor to recover. No doubt, as the respondent contends, he could not be required to be forever in a position to procure a conveyance from a third party. But, if there be any reason to excuse performance on his part, it is a matter of defense which we cannot pass upon without knowing the facts. The point which we now decide is that the plaintiff or her assignor did not necessarily incur a forfeiture by failing to make a selection within either a reasonable or a stated time.

The interlocutory judgment should be reversed, with costs, and the demurrer overruled, with costs, with the usual leave to the defendant to answer on payment of said costs.

INGRAHAM, P. J., and McLAUGHLIN and LAUGHLIN, JJ., concur. DOWLING, J., dissents.

---

### JOHNSON v. RITER–CONLEY MFG. CO.

(Supreme Court, Appellate Division, First Department. March 8, 1912.)

TRIAL (§ 304*)—MISCONDUCT OF JURORS—REVERSIBLE ERROR.

In an action for damages for causing death, it was fatal misconduct for a juror to willfully receive outside information as to the results of former trials of the same case, in violation of Penal Code, § 73, now Consol. Laws 1909, c. 88, § 373, making such conduct a misdemeanor.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 525–527; Dec. Dig. § 304.*]

Appeal from Special Term, New York County.

Action by Alma C. Johnson, as administratrix of William S. Johnson, deceased, against the Riter-Conley Manufacturing Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

Scott McLanahan, for appellant.
Charles P. Robinson, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DOWLING, J.   Plaintiff has recovered a judgment for $15,000 damages for the death of intestate, caused by the alleged negligence of defendant.   After the trial certain facts as to the conduct of one of the jurors thereat were brought to the attention of defendant's attorneys, who thereupon moved to vacate the judgment, to set aside the verdict, and for a new trial.   Upon that motion, numerous affidavits were submitted tending to show that juror No. 5, John Winton, Jr., had at the close of the first day of the trial expressed his determination to have brought in a large verdict for plaintiff and to control another member of the jury to join with him in such effort. These charges are denied by Winton.   Conflicting statements were sworn to by the various affiants; Burt Rice having sworn to one affidavit used on defendant's behalf and to two affidavits used on plaintiff's behalf.

Without determining how far these charges are justified, we find sufficient in Winton's own admissions to necessitate the granting of the motion.   Clarence Pentz made affidavit that at the close of the first day of the trial (which occupied three days in all), as he and one Burt Rice, both witnesses upon the trial, were on their way home, the juror Winton came up to them, inquired if they were on the Johnson case, and after certain statements said, "Where are you going?"  They replied that they were going to drink, whereupon Winton said, "Come on," and all three went to a saloon, where he paid for liquor for all three, gave them his card, and made certain other statements.   In this Pentz was corroborated by Burt Rice.   Winton, in his first replying affidavit, admitted that he met Pentz and Rice on his way to the saloon in question, for which they were also bound, and that they drank together, but denied he paid for all.   He then swears that Pentz then told him that there had been two previous trials of the case; that the first trial resulted in a verdict of $1,500 for the plaintiff, and the second in a disagreement of the jury.   This admission he never thereafter qualified in any way.   Of course, the fact that he received this information was never communicated to the trial court.   In so receiving it, Winton was guilty of a violation of section 373, c. 88, of the Consolidated Laws (formerly section 73 of the Penal Code), providing as follows:

"A juror * * * who willfully receives any communication * * * or information relating to a cause or matter pending before him, except according to the regular course of proceeding upon the trial or hearing of that cause or matter, is guilty of a misdemeanor."

While the other jurors all make affidavit that the verdict was reached after full deliberation, and without any influence exerted upon them by Winton, the fact remains that their action was participated in by a juror who, even if not as prejudiced and biased against defendant as some of the affidavits would make him appear, still had, in violation of law, received information about the results of prior trials of the action, which he was not entitled to receive, and the fact of his having received which, if made known to the court, would have required his dismissal from further service upon the jury.   As was said by Justice Daniels in Sparks v. Wakeley, 7 N. Y. Wkly. Dig. 80:

"The affidavit leaves little reason for doubting the truth of the charge that one or more of the jurors before whom this action was tried improperly conversed with other persons concerning the case. Nothing improper was probably designed by the jurors; but the fact still remains that the jurors may have been, and probably were, influenced in their verdict by what was improperly said to them before or during the progress of the trial. Presumption cannot be closely balanced in cases of this description. The purity of the administration of justice requires that it should be guarded against extraneous influences of this description; and that can only be done by setting aside the verdict of jurors who have so forgotten or disregarded the obligations of their office as to engage in conversation with others concerning legal controversies they are called upon to hear and decide."

Upon the trial of an action litigants are entitled to the verdict of a jury of 12 impartial men, who have not been guilty during the trial of acts of impropriety so gross as to bring them within the inhibition of the penal statutes of the state, or of acts, even if technical and trivial, which have affected the result of the trial.

"We cannot determine with certainty, nor is it necessary that we should, that the acts complained of did influence the verdict. It is sufficient cause for reversal if they are likely to do so." Matter of Vanderbilt, 127 App. Div. 408, 111 N. Y. Supp. 558.

In the case at bar, even if the other jurors were uninfluenced by Winton, and even if he were not so prejudiced and biased as he is claimed to have been, the salient fact remains that he was guilty of a penal offense in receiving, outside the courtroom, information concerning the prior trials of the cause, and this misconduct was too serious to permit of a verdict in which he participated to remain effective.

The order appealed from will therefore be reversed, with $10 costs, and the motion to vacate the judgment, to set aside the verdict, and for a new trial will be granted, with $10 costs. All concur.