BRIDGET WALSH, Respondent, v. LOUIS FRANKENTHALER, Appellant.

First Department, January 10, 1919.

Landlord and tenant — negligence — action for personal injuries from falling upon stairway as a result of catching foot — admission of evidence and permission of instructions to jury tending to show wealth of defendant and his disregard of his obligations to others, erroneous — admission of X-ray photograph without proof as to its genuineness — basis of expert testimony.

Where, in an action for personal injuries sustained by plaintiff in falling upon a stairway in defendant's tenement house as a result of catching her foot in a loose and defective tin nosing on one of the stairs, the defendant's son, who looked after the property, testified that he visited the premises twice each week, it was reversible error to permit plaintiff, upon cross-examination, over objection of the defendant, to examine the son at great length with respect to his father's ownership of a large number of other tenement properties, so as to establish that the defendant was a man of wealth and then in summing up to refer to this testimony and use it in a manner calculated to create bias on the part of the jurors and to inflame their passions by describing the defendant as a selfish and unfeeling monster regardless of his obligations to others.

It was also error to admit in evidence an X-ray photograph without any proof that it was genuine or was a correct representation of plaintiff's injured arm, although said photograph was not exhibited to the jury and was subsequently withdrawn, with an instruction that it be disregarded, especially since subsequent medical testimony as to the accident was based largely upon said photograph.

An expert witness may not draw inferences or state conclusions from the testimony of other witnesses.

APPEAL by the defendant, Louis Frankenthaler, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 22d day of March, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on the 26th day of March, 1918, denying defendant's motion for a new trial made upon the minutes.

*William Dike Reed* of counsel [*William B. Shelton* with him on the brief], for the appellant.

*Hugo Wintner* of counsel [*Abraham Harris*, attorney], for the respondent.

SHEARN, J.:

The judgment under review was entered upon a verdict of $2,500 damages for personal injuries, sustained by plaintiff in falling upon a stairway in defendant's tenement house as a result of catching her foot in a loose and defective tin nosing on one of the stairs. The existence of the alleged defective and dangerous condition of the stair was sharply contested, but the evidence fairly supports the verdict, both upon the issue of plaintiff's contributory negligence and upon the issue of defendant's negligence. The record, however, presents certain occurrences in the course of the trial which, aside from erroneous rulings relating to the admission of evidence, clearly forbid sustaining the judgment.

The defendant was eighty-six years old and was not physically able to attend on the trial. His son, who looked after the property for his father, testified that he visited the property twice each week and, on inspecting the stairway, had discovered no such defective condition as claimed on behalf of the plaintiff. Upon cross-examination, plaintiff's counsel was, over insistent objection, permitted to examine the son at great length with respect to his father's ownership of a large number of other tenement properties. The excuse for this was to show that the son, who had charge of some of the other properties, was so busily occupied that it was unlikely to be true that he inspected this particular property twice a week, although one of plaintiff's chief witnesses had already testified that the son visited the premises twice a week. The real purpose of this line of inquiry, which tended to show that the defendant was a man of wealth, was disclosed by the use made of the testimony in the summing up of plaintiff's counsel. We find this passage in the summation: " I will have to depend upon these two ignorant women, poor as their testimony is and hard as it is to elicit the facts from them to describe the nature of that tin. Now, Mrs. Jacoby says that she complained of this; that she was given nails and told by Frankenthaler and by the agent, ' Nail it down.' That is done, gentlemen, isn't it, in your experience in these tenement houses especially; *a man owns so many he cannot be bothered with a little thing like this.* He tells us the agent comes around and as soon as he gets the money he is content, and

the owner gets the money and he is content. And he says to the janitress, ' Go and nail it up '— indifference! It is human nature in that respect to be indifferent. *You own so many things, ' What is a poor little step here and there, what is a little injury here and there? It does not matter in the great mass of things that I have got and own. All I want is the money and rental.'* Mr. Reed: I object to these remarks of counsel on this subject of ownership and money of the defendant, as improper."

There is absolutely nothing in the testimony to warrant the statement: " He tells us the agent comes around and as soon as he gets the money he is content, and the owner gets the money and he is content," or for the words apparently put in the mouth of the defendant in an imaginary soliloquy: " What is a poor little step here and there, what is a little injury here and there? It does not matter in the great mass of things that I have got and own. All I want is the money and rental." This was pure fiction and rhetoric. Thus we find that the over-zealous counsel for the plaintiff not only dragged into the case the utterly irrelevant facts concerning defendant's large realty holdings, and played upon this in a manner calculated to create bias on the part of a certain class of jurors, but that, in addition, an attempt was made to inflame the passions of the jury by employing imaginary remarks and fancied workings of defendant's mind in order to paint the defendant as a selfish and unfeeling monster regardless of his obligations to others and thinking only of his wealth. In this country it is no crime for a man to be rich. We do not have one rule of liability for the poor and another for the well-to-do. That these statements of counsel to the jury did not constitute an argument upon the evidence in the case and that they went far beyond what is permissible in summing up is too obvious to be dwelt upon. The learned counsel for the plaintiff evidently realizes his mistake and regrets that his excess of zeal carried him to such lengths, but it is urged that as the verdict is not an excessive one no harm was done by the regrettable occurrence. There is no means of determining whether or not the jury was affected by these intemperate remarks. If counsel's feelings of indignation were imparted to the jury, their finding on the

closely contested issue of defendant's negligence may have been unfairly influenced. Whether this be so or not, we cannot permit a judgment to stand where the record shows that such use was made of the right to sum up the evidence in the case.

Errors were committed in admitting incompetent testimony. The injury complained of was a ·fracture in the shoulder joint. Over objection and exception there was admitted in evidence an X-ray photograph without any proof that it was genuine or was a correct representation of plaintiff's injured arm. While the photograph was not exhibited to the jury, plaintiff's medical witness described to the jury what the photograph showed, and testified that, although he had been unable by physical examination to determine more than one fracture, this photograph showed a double fracture. Subsequently in the case it was conceded that the exhibit was incompetent, and it was withdrawn and the jury were instructed to disregard it, but defendant's counsel, believing that the evidence could not be disregarded by the jury, asked for a mistrial, which was refused. We think that this was, under the circumstances of this case, prejudicial error, followed up as it was by other incompetent testimony. Plaintiff's doctor had testified to the conditions flowing from two fractures to the humerus, and to their permanency. At the close of the cross-examination his entire testimony relating to one of these fractures was stricken out. Referring to the other of these fractures, counsel for plaintiff asked a hypothetical question based in part upon the testimony which had been given by the plaintiff but not recited in the question. It did not appear that the witness was present when the plaintiff gave her testimony or that he was familiar with any substantial part of it. It is well settled that an expert witness may not draw inferences or state conclusions from the testimony of other witnesses. Furthermore, there is no doubt but that the doctor's testimony as to the accident being a competent producing cause for the injuries described by him, and as to the permanent effects of the injuries, was based largely upon the excluded X-ray photograph. There are other errors in the record to which it is not necessary to refer.

The judgment and order should be reversed and a new trial ordered, with costs to appellant to abide the event.

Dowling, Laughlin, Smith and Page, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.