EDITH BLOODGOOD, Respondent, *v.* PAYNE WHITNEY, Appellant.

First Department, February 17, 1922.

Motor vehicles — negligence — collision between plaintiff's car while attempting to pass truck and defendant's car coming from opposite direction — verdict for plaintiff against weight of evidence — master and servant — chauffeur not engaged in employer's business — trial — inflammatory remarks by counsel in addressing jury.

In an action for damages for personal injuries received in an automobile collision, a verdict in favor of the plaintiff is against the weight of the evidence where it appears that the plaintiff's car, driven by her husband, while attempting to pass a large covered truck by turning to the left, was struck by the defendant's car, driven by the defendant's chauffeur, the point of contact being the right front part of each car; that the plaintiff and her husband, the only witnesses for the plaintiff, testified, in substance, that they attempted to pass the truck when they were about four car lengths behind it and about thirty-five or forty feet away from an intersecting street which they were approaching; that they sounded the horn and started to pass the truck, looking ahead but seeing nothing coming toward them, and that before the car got straightened out parallel to the truck, the defendant's car came suddenly from in front of the truck and, instead of keeping to the right, attempted to pass between the plaintiff's car and the truck; that the defendant's chauffeur, corroborated in

essential details by five apparently disinterested witnesses, testified that just before the accident he was on the southerly side of the street; that he saw the truck coming toward him on the north side; that, when he first saw the plaintiff's automobile, it came out diagonally as if it were going to cross in front of him into the intersecting street; that he saw the plaintiff grab the steering wheel and that the car swerved toward the north side of the street; that he applied his emergency brake, and that the right·front wheel of the defendant's car was struck by the front frame of the plaintiff's car.

The defendant's chauffeur was not, as a matter of law, engaged in the defendant's business at the time of the accident, where the evidence showed that after he had driven the defendant's car on an errand for the defendant, and safely returned it to the defendant's home, he immediately resumed possession of the car for his own purposes, and the accident happened while he was returning from that trip.

Comments by plaintiff's counsel in addressing the jury, intimating that the defendant was a political king and that one of his witnesses was serving him and that he was probably sitting in his office with his feet on the desk laughing at the character of the testimony being given, warranted not only a stern rebuke by the trial justice, but justified the withdrawal of a juror.

APPEAL by the defendant, Payne Whitney, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 15th day of October, 1920, upon the verdict of a jury for $40,000; also from an order entered in said clerk's office on the 29th day of December, 1920, denying defendant's motion for a new trial made upon the minutes, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial upon the ground of newly-discovered evidence.

*William Dike Reed* [*Murray G. Jenkins* of counsel; *E. Clyde Sherwood* with him on the brief], for the appellant.

*James B. Henney* of counsel, for the respondent.

GREENBAUM, J.:·

The action is brought to recover damages for personal injuries alleged to have been sustained by plaintiff through the negligence of defendant's chauffeur.

Five grounds are urged in behalf of the appellant for a reversal of the judgment: (1) That the verdict is against the preponderance of the credible evidence. (2) That at the time of the accident the chauffeur was not engaged in any work in behalf of his master. (3) That comments made by plaintiff's counsel upon the summing up were grossly prejudicial to the defendant. (4) That the amount of the verdict is excessive. (5) That the motion to set aside the verdict on the ground of newly-discovered evidence should have been granted.

The accident happened on Jackson avenue between Flushing and New York at seven o'clock in the morning of June 18, 1917. Jackson avenue runs approximately east and west, and has two

trolley tracks on each side of the roadway with a width of twenty-five feet, eight inches between the tracks. Plaintiff was in a five-passenger Buick touring car, which belonged to her and which was driven by her husband at the time of the accident, and was going towards New York, proceeding in a westerly direction along Jackson avenue. Defendant's car at that time was driven by defendant's chauffeur, coming from New York and going in an easterly direction towards Flushing. The two cars collided a short distance east of Third street. The outstanding features of the occurrence will be briefly stated. Just before the accident the plaintiff's car was behind a large covered produce truck, which was going in the same direction as the plaintiff. The plaintiff's automobile was struck by defendant's car while the former was in the act of attempting to pass the truck by turning to the left. The collision took place before the plaintiff's car had passed the truck. After the collision that car was found on the south side of Jackson avenue. The point of contact of the two colliding cars was the right front part of each car, so that plaintiff's car at the moment of contact was on the southerly side of the road and south of defendant's car, concededly the wrong side of the road.

The plaintiff claimed that the defendant's car crossed her path and collided with the right front part of her car. Defendant's claim was that plaintiff's car crossed the path of his car.

The only witnesses who testified in behalf of the plaintiff as to how the accident occurred were the plaintiff and her husband. She testified that, when she first observed the truck ahead of her, she was about a block and a half away from it; that when she started to pass it, her car was at a distance of about four lengths of her car from the truck, and about thirty-five or forty feet away from an intersecting street, which she was approaching, known as Third street; that the horn of her car was sounded; that she looked ahead, but could see nothing in sight; that the road was clear, and that, to quote her language: " Just as we went to turn Mr. Bloodgood blew his horn, and these horns blow quite a while. We just started to turn and the car had not straightened out yet, but all of a sudden a car seemed to fly from in front of this truck, and instead of this car keeping to the right as it should have done, it turned and tried to get between our car and the truck   *   *   * and as we started to straighten out we were about two lengths, and when this Whitney car crashed into our car, I should judge we were about a length and a half, back of the truck."

She also testified that the impact " threw our car up in the air, it stood it right up."

The testimony of the plaintiff's husband, who drove the car, was

as follows: He said that he saw a large produce truck ahead of him, which he tried to pass when he was about four car lengths away from it; that he blew his horn and started to pass the truck; that he looked ahead of him, but saw nothing coming from the New York direction; that before he got his car straightened out parallel to the truck, he saw the defendant's car coming from the direction of New York; and that as defendant's chauffeur " came around the front of the truck like that (indicating), in the fraction of a second he saw me, and instead of turning out where the road was bad he formed a semi-circle and tried to get between me and the truck."

The witnesses as to the accident, called in behalf of the defendant, were Shea, defendant's chauffeur; one Cavanagh, a horseshoer, who at the time was driving a car in the direction towards New York; one Keiley, who saw the cars just prior to and subsequent to the collision; one Blosveen, who was going towards New York and saw the accident; one Girgos, a painter who was walking in the same direction as plaintiff's car was then going; and one Farrelly, an automobile mechanic, who did not see the accident, but explained the injuries done to both cars, confirming the uncontradicted testimony that the right side of the plaintiff's car came into collision with the right side of defendant's car.

Shea's testimony was that he was going east on Jackson avenue, and just before the accident was on the southerly side of the road on the east-bound trolley track; that he saw a large covered truck coming towards him on the north side of the street; and that, when he first saw plaintiff's automobile, it came out diagonally as if it was going to cross in front of him into the intersecting street (Third street); that he saw plaintiff grab the steering wheel, and that the car swerved toward the north side of the road; that he applied his emergency brake; and that the right front wheel of the defendant's car was struck by the front frame of the Bloodgood car; and that the accident occurred on the east-bound trolley track.

Defendant was corroborated in essential details by the testimony of five apparently disinterested witnesses.

The version of the plaintiff and her husband, both of them interested witnesses, as to how the accident occurred, is highly improbable. Contrasted with the testimony given in behalf of defendant by five disinterested witnesses, there is a lack of preponderating evidence in support of the essential ultimate facts bearing upon the questions of defendant's negligence and plaintiff's freedom from negligence contributing to the accident, thus necessitating a reversal of the judgment.

Defendant at the time of the accident was living at his country

First Department, February, 1922.          [Vol. 200

home at Manhasset, L. I., and in connection therewith he had a private garage for his automobiles. The accident happened early on Monday morning. It appears that on Sunday afternoon, the day before the accident, an order was given to defendant's chauffeur to drive one Major Appleton, a brother-in-law of the defendant, to the Manhattan Pennsylvania railroad station. The chauffeur with Mr. Appleton left defendant's grounds at five o'clock in the afternoon, and reached the Pennsylvania station at about six o'clock. Instead of returning to Long Island, Shea met a friend of his, whom he drove to the latter's home at Ninety-sixth street, borough of Manhattan, and then drove to Sixty-sixth street and Lexington avenue, where Mr. Whitney's city garage was located, but which was then not in use and was in charge of a caretaker. He left the car there. Shea then went to a hotel, remaining there for about an hour, where he met some friends, whom he drove to defendant's home at Manhasset, stopping on his way at a place known as the Red Lion Inn, where the party had supper. Thereafter the car was driven to Manhasset, and Shea showed his friends around defendant's grounds. After a short stay at the Whitney estate, he took his friends back to the city again, stopping at the Red Lion Inn, and reached New York at a late hour. He put the car in the defendant's city garage, where he slept that night. He left there on Monday morning sometime between six and seven o'clock to return to Manhasset. It thus appears that, instead of immediately returning home on Sunday night and depositing the car at defendant's country garage, the chauffeur used the car for his own unauthorized purpose, but nevertheless returned with it to the defendant's residence at Manhasset. He, therefore, returned to the place from which he had started on Sunday night, without any accident. Instead, however, of leaving the car on the premises of the defendant upon his return, he deliberately resumed possession of the car without the slightest authority so far as the evidence discloses, and used it for his own pleasure. This unauthorized use of the car constituted, in effect, an act of conversion. When he returned the following morning, he was not engaged in the defendant's business, which had been completed on the day before; but was merely returning the car which he had wrongfully taken from the defendant's premises on Sunday night.

It is unnecessary to review the many opinions which have recently been written, where chauffeurs have unauthorizedly departed for a time from the business of their employers and used the car for their own purposes, and where they then resumed the work of the employers, and while returning met with an accident. Here the car had been brought back to the defendant's

home on Sunday after defendant's guest had been delivered to the railroad station, and the business of the employer was completed. Thereafter without authority it was utilized by the chauffeur for his own use.

In the course of his charge the learned court said: " Even if the jury believe that driver Shea took the defendant's car and made the trip from New York to Manhasset and back again to the defendant's garage at 66th Street, thus leaving the service of the defendant temporarily for a personal or private trip, nevertheless, if the jury find that at the time of the accident Shea had resumed and was engaged on the defendant's business in bringing the car back to Manhasset, any negligent act of Shea would be the negligent act of the defendant for which the latter would be responsible."

If the jury believed the testimony of defendant's witnesses as it has here been outlined, then, as matter of law, the taking of the car from defendant's premises at Manhasset, to which it had been returned after he had attended to the business of the defendant, was tortious and its subsequent use was not on defendant's business, but solely on that of the chauffeur.

The third ground of error asserted by appellant is based upon the remarks of plaintiff's attorney in addressing the jury, as follows: " Mr. Jenkins: I wish to note certain exceptions to Mr. Henney's address, which I consider deliberately done and for the purpose of inflaming the jury. He spoke of a political king, and that the witness Cavanagh was serving a political king, and by innuendo and otherwise he said that the political king referred to was Payne Whitney. I most certainly except to that. I also except to the statement made to the jury a few moments ago that probably Mr. Whitney was sitting in his office with his feet upon the desk laughing at the character of the testimony given here in court, also on the ground that it is inflammatory. It seems to me that these matters are so serious as to warrant the court in withdrawing a juror, but if not, it is a matter for the court's action at this time, and at such other time as the court may take up the matter. Mr. Henney: As to the first statement, I think Mr. Jenkins misunderstood me. I did not refer to him as a political king. I spoke of witnesses so far forgetting their manhood as to think that they owed a duty to affluence or influence of some political king to serve his purposes. The Court: The court will properly instruct you, gentlemen, in the charge, with reference to remarks made by counsel on either side in summing up."

Although the court said that it would properly instruct the jury

in respect of the incident just disclosed, all that the learned court said was " comments made by counsel on either side are not to sway you or change your opinion of the facts. Your opinion of the facts must be based on the testimony you have heard from the mouths of the witnesses, so that if you find that counsel on either hand has said anything in summing up this case or at any time during the trial, or made a remark that does not square with your opinion of the facts, you are to entirely disregard counsel's statements."

The court left it to the jury to say whether improper comments of counsel squared with their opinion.

It seems to us that the uncalled for comments of counsel warranted not only a stern rebuke by the learned trial justice, but justified the withdrawal of a juror, as it is very doubtful whether the mischief which had been done could even have been remedied by subsequent instructions on the part of the court that the remarks of counsel were grossly improper and unfair to defendant. (*Walsh v. Frankenthaler*, 186 App. Div. 62, 64.)

The judgment and order are reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.