### BROWN v. ROME, W. & O. R. Co.

*(Supreme Court, General Term, Third Department.   May 17, 1888.)*

1. RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE.
    Plaintiff stopped at a sign-board 47 feet from the railroad crossing, and listened, but heard no sound of the approaching train, towards which a strong wind was blowing at the time.   Upon his starting forward, some children shouted to him, warning him of the approaching train, but, supposing that they were only crying out in their sports, he advanced until he passed a building nine feet from the track, where for the first time he could obtain an unobstructed view of the track, and his horses being already upon the track, were killed, and plaintiff injured, by defendant's train.   *Held* that, the jury having found from these facts that plaintiff did not contribute to his injury by his negligence, their verdict should be allowed to stand.

2. SAME—ACCIDENTS AT CROSSINGS—INSTRUCTIONS—ABSENCE OF FLAG-MAN.
    In an action for damages for injuries received at a railroad crossing, it is proper to charge the jury that they cannot predicate or infer negligence from the absence of a flag-man; but they have a right to take into account, in the surrounding circumstances, that there was no flag-man.[1]

Appeal from circuit court, St. Lawrence county.

Appeal by the defendant from a judgment in favor of the plaintiff entered upon a verdict of the jury at the St. Lawrence circuit, and also from the order denying motion for a new trial made upon the minutes.   The action was to recover for injuries sustained by the plaintiff to his person, wagon, horses, and harness in consequence of being struck by the train of the defendant upon the railroad crossing on State street, in the village of Henvetton, on the 24th day of November, 1885.

Argued before LEARNED, P. J., and LANDON and INGALLS, JJ.

*Edmund B. Wynn,* for appellant.   *Thomas Spratt,* for respondent.

LANDON, J.   Whether the plaintiff was guilty of negligence contributing to his injury was, upon the evidence, a question of fact for the jury.   We might hesitate to uphold this verdict if it were not that the crossing in question appears to be unusually and unnecessarily dangerous.   The plaintiff was riding alone in his two-horse lumber wagon, in a southeasterly direction.   The defendant's train of cars was going in a direction a little north of west.   The line of the plaintiff's course and the line of the course of the train intersected each other so as to form an obtuse angle.   The approaching train was advancing on the plaintiff's left.   The plaintiff was going down a moderate declivity.   His view on the left towards the approaching train was wholly obstructed with buildings and trees, until he passed the corner of the building next the track and came within nine feet of it.   He must have been sitting at least nine feet from his horses' heads.   It was nearly dark.   The wind was blowing strongly against the coming train.   The plaintiff testified that the wind and snow were beating against the right side of his head and face.   There was a sign-board, giving warning of the cars.   This was 47 feet from the track.   The plaintiff stopped there and listened; heard no sound of any train; heard some children playing and shouting in the street.   He looked to the right and left, but saw no train; drove on on a sharp walk.   His horses stepped upon the track,—were about four feet upon it,—when the train, as the witness expresses it, dashed by the Smither's house; that is, the house within

---

[1] Respecting the duty of railroad companies at crossings, see Railroad Co. v. Schuster, (Ky.) 7 S. W. Rep. 874, and note; Railway Co. v. Boozer, (Tex.) 8 S. W. Rep. 119; Railroad Co. v. Lee, (Tex.) 7 S. W. Rep. 857.

nine feet of the track.   The plaintiff strove to pull to the right, but had no time to escape.   The plaintiff was seriously injured, his horses killed, his wagon broken, and his harness destroyed.

It must be said that a railroad crossing where trains pass by at the rate of 20 miles an hour, where no flag-man is stationed, and where the approaching traveler, sitting in his wagon, has only 9 feet of space in which to make his observations, is very much like a death-trap.   It is true, the bell was rung and the whistle sounded by the approaching train.   Persons near the crossing, their hearing not confused or affected by the rattle of plaintiff's wagon, heard the bell and whistle and the rumble of the train.   Silas Sheldon hallooed to him to stop, but Sheldon was 30 or 40 feet away, and says the plaintiff apparently did not hear him.   Charles Woodside, James Maque, Minnie Lewis, May Fleetham, William and John Smith, children playing on the street, testify that they called out to the plaintiff to stop, but it seems the plaintiff did not understand them, and thought they were shouting in their sports.   The jury have found that the plaintiff was not to blame for not heeding the shouts, which, if he heard, he misunderstood.   We cannot say, under the circumstances, that their finding is not right.   Whether, under all the circumstances, the plaintiff should not have been more cautious, more alert, more actively vigilant, was plainly a question for the jury.

It is urged that he was familiar with this crossing, and knew the dangers of the situation.   Suppose he had crossed there a hundred times before without encountering any close risks, or had been able to hear the train in time to avoid it, such an experience might lead him to expect that his risk now would not be increased.   These are matters for the consideration of the jury.

Exception is taken to the charge of the judge respecting the absence of the flag-man.   He said:   "The question of there being a flag-man or not is always to be properly taken into account in passing upon the question of negligence."   At the request of the defendant's counsel, he charged that "the jury could not predicate or infer negligence" from the absence of a flag-man, and added:   "I simply say they have a right to take into account, in the surrounding circumstances, that there was no flag-man."   This was not erroneous.   The presence or absence of a flag-man was just as much a part of the description of the transaction as any other circumstance.   All the circumstances are properly given; for, if any one should be left out, the jury might be misled.   The appellant cites *Houghkirk* v. *Canal Co.*, 92 N. Y. 219.   We think the court did not violate the rule as expressed in that case, but conformed to it.   The judgment should be affirmed, with costs.

LEARNED, P. J., and INGALLS, J., concur.