MADELINE DENNIS, as Administratrix, etc., of HUGH DENNIS, Deceased, Plaintiff, *v.* CARRIE TISHMAN and Others, Defendants.

Supreme Court, New York County, August 12, 1931.

848

*Griffiths & Content* [*Charles H. Griffiths* and *Clarence V. Opper* of counsel], for the plaintiff.

*William E. Lowther* [*G. Everett Hunt* of counsel], for the defendants.

BLACK, J. Plaintiff in this case sued for damages for the death of her husband, who died of concussion of the brain caused by a fall upon the stairway in the premises of defendant upon which stairway there was no handrail. Defendant claimed that it was not guilty of negligence, and that the deceased was negligent in the manner of descending the stairway upon which he fell, and also because chemical examination of his brain showed the presence of enough alcohol there to warrant the belief that he was intoxicated at the time of the fall.

At the trial, lasting three days, by exceedingly able counsel for both sides, who thoroughly presented every phase of the case, it was given to jury at twelve-fifteen P. M. There follows the stenographer's minutes of what occurred later in the day. (In the court's chambers: Present: The court and counsel. Colloquy between court and counsel.) The court: At five P. M. the jury asked the following question: " One juror states having been at 36 West 20th yesterday and examined the stairs. Was this permissible? He is the only one who does not agree with the eleven other jurors." To which . the court answered as follows: " Answer: It was not permissible for the juror to examine the stairs, and the charge to the jury was that they could only consider the sworn testimony and the exhibits in evidence, and the jury cannot consider any information secured from such examination of the stairs by the juror." (The court's answer to the question of the jury was sent up to the jury at five-forty P. M.) Mr. Hunt: On behalf of the defendant, I object to the procedure followed by the court, and I ask for a mistrial at this time — it appearing on the record, I presume, so that there won't be any question about that, that I am asking before the paper is sent back to the jury. The Court: Yes. Mr. Hunt: Upon the ground that it was improper on the part of the juror to visit the scene of the accident without the court's permission during the trial, and specifically upon the ground that there now is a handrail along the right-hand side of the stairway, as well as the left-hand side, and that this handrail has been put in subsequent to the accident, and that the new handrail is at the turn

in the stairway. I ask an opportunity to submit an affidavit, unless Mr. Griffiths will acknowledge the fact that such handrail is there at the present time. Mr. Griffiths: I concede that there is now a handrail at the turn on the right-hand side of the stairs coming down and covering the place where the accident happened. Mr. Hunt: Which was not there at the time of the accident. Mr. Griffiths: Yes. Mr. Hunt: And upon the further ground that conditions have been changed since the accident, which may be damaging and prejudicial to the defendant's case. Mr. Griffiths: On behalf of the plaintiff, I would have been glad to have consented with counsel for the defense to the instruction of the court, in an effort not to bring about a mistrial. The plaintiff at this time simply notes an exception to the procedure followed by the court. The Court: The motion for a mistrial is denied in view of the fact that the jury has not yet agreed and it is not known whether they are for the defendant or for the plaintiff, and the court, as at present advised, can see no harm that would result to either side by permitting them to reach a verdict. If they are able to reach a verdict and either side is dissatisfied, the court will then entertain a motion from the dissatisfied side for a new trial, and will afford both sides opportunity to furnish memoranda upon the point as to whether the jury should have been allowed to proceed to a verdict or whether the motion for a mistrial should have been granted. Mr. Hunt: I take an exception. (The jury then continued their deliberations and at seven-thirty P. M. the jury returned to the courtroom and stated that they found a verdict in favor of the plaintiff in the sum of $60,000.) Mr. Hunt: I first ask your honor to poll the jury, if you will, please. The Court: Yes, poll the jury. (The clerk of the court thereupon polled the jury and each juror stated in turn that the verdict just rendered was his verdict.) Mr. Hunt: May it please the court, on behalf of the defendant, I move to set aside the verdict upon the ground, first, that it is contrary to law, in that there is no credible evidence that the deceased man fell by reason of the absence of any railing, and that it is contrary to the evidence in the case that the plaintiff fell by reason of any negligence of the answering defendant in this case, and upon the ground, further, that it affirmatively appears upon the undisputed evidence that the man was intoxicated at the time of the accident, and specifically upon the ground at this time that I have already urged upon the court, that the verdict has been reached by a jury where one of the jurymen acted in an improper manner, as laid down by the Appellate Division and the Court of Appeals of this State, to wit, that it is improper under any circum-

stances for a juryman to go to the scene of the accident alone and unescorted, without the permission of the court and without the custody, at least, of a court officer, and upon the grounds upon which I urged a mistrial at the time that that was called to my attention, I now urge it upon your honor, and move to set aside this verdict and declare a mistrial in the case. The Court: I would not set it aside on any ground except the one you mentioned, and upon that I am going to reserve decision. Mr. Hunt: I ask your honor now to sit and inquire from the juryman whether or not he visited the premises. The Court: Which juror was it? Juror No. 6 (Mr. Baer): I did. I happened to pass by at the time, having some business on Twenty-fourth street, and I went past the building and just went into the building. The Court: What street was the building on? Twenty-second, wasn't it? Juror No. 6: What did you say? The Court: What street was the building on? Juror No. 6: Which building do you refer to? The Court: The building where this accident happened. Juror No. 6: On Twentieth street. The Court: Twentieth. You said you had business on Twenty-fourth street? Juror No. 6: On Twenty-fourth street, yes. I was going back to the subway. The Court: Why did you do that? Juror No. 6: Well, I just happened to go by there as a matter — well, I didn't think there was anything wrong about it. The Court: You didn't tell anybody you were going, did you? Juror No. 6: What did you say? The Court: You didn't tell anybody you were going? Juror No. 6: No, I did not, no. The Court: And you didn't tell anybody you had gone? Juror No. 6: No, I didn't tell anybody I was going, no. I didn't speak to any one while I was there. I just went to the building and looked up the stairs and came out again, that is all. The Court: Do you think it was fair for you to go there and say nothing about it and try to make up your own mind on this case when these other men had listened to the evidence and I had told you specially to only consider the facts that were brought out before the jury and the exhibits in the case? Juror No. 6: That didn't affect my mind whatsoever in so far as that is concerned. The Court: You mean that the fact that you went there did not affect your mind? Juror No. 6: No. Mr. Hunt: Well, if your Honor please, on that question I would want to — Juror No. 6: It did not. Another Juror: Your Honor,— Mr. Hunt: Pardon me. The Court: Wait a minute; one at a time. Mr. Hunt: That is going into a question, of course, that none of us are permitted to go into. The Court: I did not ask the question at all. He volunteered that. Mr. Hunt; I say, in fairness to the defendant, we know the rule is that we cannot go into that here. The Court: I am not going into it. I did not ask the question. He volunteered

the statement. Mr. Hunt: Then I move to strike it off the record. The Court: No, I cannot strike from the record what he said. You can take an exception to my refusal to strike it out. Mr. Hunt: All right, I take an exception. Mr. Griffiths: One other gentleman wanted to say something. The Juror: No. Mr. Griffiths: I see; I thought maybe there was some statement. The Court: I do not think I can go into anything that happened in the juryroom. The court has no right to ask it. Mr. Hunt: We have no right to. Mr. Griffiths: No, I thoroughly agree with that. The Court: I am going to consider whether or not I will fine the juror, because I think it was a very unwise thing to do, because it has tied up the thing the whole afternoon here, apparently, and it is a question whether or not it has affected the verdict. Of course, the juror says it has not. Juror No. 1: If your honor pleases, I don't know whether I am in order or not — Mr. Hunt: Will your honor instruct the juryman that he cannot tell anything that occurred in the juryroom? The Court: No, I will not tell him he cannot. I have not asked him. If the juror wants to make a statement, I do not see how I can help his making it. I do not ask any question. You are not obliged, gentlemen, to state anything that happened in the juryroom at all. Juror No. 1: No, but I thought, inasmuch as this question is arising now, that as foreman of the jury I may enlighten the court that the question of this juror having visited the premises or the scene of the accident had no bearing whatsoever in any of our discussions; that he merely made mention of that indirectly, not during any discussion as to the accident or verdict. The Court: I think we had better not go any further into what happened in the juryroom. I will not set aside the verdict on any ground other than the one I have mentioned. I will reserve decision and see whether I will set it aside on the technical ground that a juror has visited the premises without permission of the court and without saying he was going there and without telling at least at the start that he had been there. Mr. Hunt: Your honor will take a memorandum on that? The Court: Yes, I will take a memorandum from both sides. If there had been a verdict, I would have set aside the verdict if I had found out that the juror had been there, but as there had been no verdict in this case, I will consider whether or not I will set it aside on the ground of the juror having visited the place. Mr. Griffiths: If your honor, pleases, you mean that you found this out before a verdict was rendered. The Court: Certainly. Mr. Griffiths: And then instructed the jury accordingly before a verdict was rendered. The Court: I gave written instructions. That all appears on the record. It is all a matter of record. Mr. Griffiths: Yes. The Court: You may excuse the

jurors, and I will ask the other juror to come back in the morning, the one who went and visited the premises.

Upon the motion for a new trial, as appears from the above minutes, decision was reserved. In addition to passing upon this motion to set aside the verdict and for a new trial upon the usual grounds, including excessive verdict, the court has to decide, *first*, whether the motion to withdraw a juror should have been granted; *second*, whether the motion for a new trial should now be granted because the motion to withdraw a juror was denied. As to the general grounds urged upon the motion to set aside the verdict and for a new trial, there is no reason why the verdict of the jury should be set aside. If defendant was negligent, and I believe it was, and plaintiff was not negligent (and I think defendant failed to sustain its burden of proving that the contributory negligence of the deceased caused the accident), the verdict and the amount of the verdict were fully warranted by the evidence. The defendant's negligence and the contributory negligence of the plaintiff were questions of fact, which have been decided by the jury. As to the other grounds urged for setting aside the verdict and granting a new trial, they involve the same question presented on the motion for withdrawal of a juror. It cannot be denied that it was improper for one of the jurors to go to the scene of the accident without permission of the court. But there are improprieties on the part of jurors which do not warrant the setting aside of verdicts. The *first* thing to consider is whether the impropriety was willful or intentional; *second*, whether or to what extent the result of the visit was communicated to the jury; and, *third*, did the juror's visit influence his own or (and) the other jurors' vote in reaching their verdict.

In deciding these questions it becomes necessary to examine the evidence before the jury as to the place of the accident and the condition of the place at the time of the accident. It was urged by counsel for defendant that the juror No. 6's visit to the scene of the accident gave him a visual impression different from that already brought out from the witnesses and the photographs in evidence. The issue of negligence in this case was whether there had been a handrail as required by the Labor Law on the right-hand side of the stairway going up. There had been no negligence claimed, because there was no handrail on the left side of the stairway at the time of the accident. It was conceded by defendants, I believe, that the handrail on the right-hand side was not there at the time of the accident at the part of the stairway where plaintiff claimed the accident occurred. Assuming that the conditions at the spot when the juror visited it had been shown already at the trial, I am at a loss to know what the juror could have seen on his

visit that would have misled or confused him or any one of the other jurors to whom he talked about what he saw, if he did·talk to them on the subject. As far as the record shows, eleven jurors had already made up their minds and were voting as one man. The juror No. 6 evidently felt that he had committed no impropriety in visiting the scene of the accident, and made no secret of the fact that he had gone, but, on the contrary, informed the jury that he had gone there. It does not appear from the record that he had told the jury what he saw there, or whether or not what he saw influenced him, but as appears from the minutes above quoted he did say when the jury brought in their verdict that his visit did not influence his verdict. The foreman of the jury likewise stated that the other members of the jury had not been influenced by the visit of juror No. 6, or anything he had told them about it. Indeed, the foreman said that "the question of this juror having visited the premises or the scene of the accident had no bearing whatsoever in any of our discussions; that he merely made mention of that indirectly, *not during any discussion as to the accident or verdict.*" These statements of the juror who visited the place, and of the foreman speaking for the other jurors, were made voluntarily, and in the teeth of the statement by the court that they need not tell anything that happened in the juryroom. What the one juror and foreman representing the other eleven said in court after the verdict was well within their rights, because it is well settled that even affidavits may be received by the court to sustain a verdict, although they cannot be received to *impeach* one. (*Thomas* v. *Chapman*, 45 Barb. 98; 10 Abb. Dig. 382; *Dana* v. *Tucker*, 4 Johns. 487; *Nesmith* v. *Clinton Fire Ins. Co.*, 8 Abb. Pr. 141; *Reynolds* v. *Champlain Transportation Co.*, 9 How. Pr. 7; *Moore* v. *N. Y. El. Ry. Co.*, 24 Abb. N. C. 77; *Gans* v. *Metropolitan*, 84 N. Y. Supp. 914.) If the juror No. 6 communicated to the jury what he saw at the scene of the accident (especially if he saw nothing more than had already developed), and nothing different, then all twelve of the jurors had an equal opportunity to decide whether or not the situation seen by the juror No. 6 was the same that had been developed in the oral evidence and the photographs. The jurors speaking through their foreman said they had not been influenced by the visit of the juror No. 6. If he did not tell them, of course, they could not have been influenced by the fact that he had been there, because at the time they sent the communication to the court they appear to have stood eleven to one. And there is nothing before the court to show that the eleven did change from this vote. After the jury resumed consideration of the case following the court's written instructions to the jury, juror No. 6, who

had visited the premises, evidently voted against the other eleven jurors. Up to that time he had not been influenced in favor of plaintiff by what he had seen. Afterwards he appears to have voted with the other eleven, and the verdict was unanimous. It is hardly conceivable that the jurors stood eleven to one for the defendant and changed to eleven to one for the plaintiff. There is nothing to so indicate it, but on the contrary the foreman says they were not influenced by anything said or done by juror No. 6, who apparently had not agreed with the other eleven jurors up to that time. And it cannot be plausibly argued that the juror who did visit the accident had at first been for the plaintiff, because the jury shortly found unanimously for the plaintiff, and he had evidently, from the jury's communication, up to that time been for the defendant. If neither juror No. 6 nor the other eleven were influenced by the visit, or what juror No. 6 reported of his visit, I fail to see why a juror should have been withdrawn or why a new trial should now be granted because the motion to withdraw a juror was denied. If these observations are correct, the court is asked to set aside a unanimous verdict reached without prejudice or passion, where no harm is shown to have resulted from the impropriety of a juror's visit to the scene of the occurrence. This the court will not do. *After all, in the race between justice and technicalities, justice should have at least an even chance.*

As the unanimous jury verdict required by our law is an archaic survival that began under conditions that do not now obtain, and utterly out of tune with right logic as to progressive thought, this court will not strain the technicalities to set aside such unanimous verdict unless it is reached through prejudice or passion or unless harm has been done the losing party from the impropriety of a juror's visit to the scene. Every case in our courts is governed by statute laws which represent the crystalized sentiment of the State, or by court decisions. The laws, if in the form of statutes, may have been reported by legislative committees of each house by a plurality *of one vote of a bare quorum of the committee;* may have passed both the Senate and the Assembly *by the same bare plurality of one of a quorum in each branch,* and finally become the law by the signature of the Governor (one man, often not a trained lawyer). If the law of a case is not contained in a statute it may be and frequently is the result of an opinion by a majority of the Courts of Appeals, which in turn may have reversed an opinion of the Appellate Division, where the vote may have been 3 to 2. But under our system, after both branches of the Legislature have passed a statute, or when the law has finally been fixed by a bare majority of a divided court, the verdict of the *jury* must be unani-

mous. It may be too early to suggest that the law requiring unanimous verdicts of twelve men, drawn mayhap from twelve different callings, should be amended so as to require (in civil cases at least) only a majority, or three-fourths or five-sixths, vote of the jury, as many States have done (see Note A appended hereto for data regarding less than unanimous jury verdicts); but in the humble opinion of the writer, when under our laws twelve men have solemnly declared their unanimous verdict, the courts should be slow to set it aside for the unintentional impropriety committed by one of them, especially where it cannot be demonstrated that such impropriety either influenced the size of their verdict or caused passion or prejudice. Where there is a willful impropriety for the express purpose of invalidating a verdict, there is still less reason for disturbing (unanimous) verdict. There is, of course, no suggestion here. It is the third trial of this case. The first, I am informed, took a day and resulted in a mistrial. The second took four days and resulted in a disagreement. The present trial started April fourteenth and was concluded April twenty-first and required at least three full days. If we assume that there is an expense of $300 a day in conducting one of our courts, it has already cost the people $2,400. It has taken the time of thirty-six men, who have acted as jurors. Its consideration has twice taken the time of the court which might have been devoted to other cases. I cannot divorce from a consideration of the motions before me the constant thought that where no prejudice or passion can be shown to have resulted from a harmless impropriety and where substantial justice has been done, the taxpayers should not be burdened with further unnecessary trials.

After a very exhaustive study of the cases in which jurors have been withdrawn or new trials have been ordered, when similar situations confronted courts, I find that this case is different in many respects from most of the cases on the subject. Nearly every case relied upon by defendant was where an alleged impropriety was not discovered until after verdict, too late for the court to instruct the jury to disregard the effect of it. My study convinces me that the spirit of the best considered decisions is against granting a new trial in this case. In some of these cases the courts held that the refusal of a motion to withdraw a juror was a matter of discretion, and they would not reverse for such refusal. (*Burrill* v. *Phillips*, 1 Gall. 360; Fed. Cas. 2200.) Although largely the same question was again presented in the motion for new trial upon the same alleged impropriety, in the case at bar there is this difference between the two motions. The motion to withdraw a juror was made before there was any verdict, and while there was

yet time to correct any impropriety by instructions to the jury. Instructions were given the jury to disregard the incident, and then after the verdict for the plaintiff defendant moved to set aside the verdict upon the usual grounds, and upon the further ground that although there had been an alleged impropriety and although the court had thereafter instructed the jury to disregard the visit of juror No. 6, still the alleged harm had been done, and it had not been cured and could not have been cured. Even then counsel had not heard the statements of juror No. 6, and of the foreman representing the other eleven jurors, who said that the alleged impropriety had not affected them. Indeed, in order for it to have affected their verdict it would have to be shown that they had changed their vote after finding juror No. 6 had visited the place. There was no such showing. There follows an analysis of the cases quoted in the memoranda by plaintiff and defendant, and of some I have found in my own investigation.

As defendant is the moving party, seeking to set aside this verdict, I first take up the cases presented by her counsel. Some of the cases are referred to in the memorandum of counsel by quotation, and others are referred to in the opinions they quoted. After I eliminate those cases cited by defendant's counsel that I think are inapplicable, I will consider the others. The cases of *Livermore* v. *Bainbridge* (14 Abb. Pr. [N. S.] 227); *Reynolds* v. *Moore* (1 App. Div. 105) and *Roosa* v. *Saugerties & Woodstock Turnpike Road Co.* (12 How. Pr. 297), cited by defendant's counsel, refer to the conduct of referees and do not apply to the present case. The cases of *Roberts* v. *Failis* (1 Cow. 238) and *Dana* v. *Tucker* (4 Johns. 487) merely hold that quotient verdicts are improper. *Sanger* v. *Merritt* (120 N. Y. 109) and *Dwinelle* v. *N. Y. Central* (Id. 117) are not directly enough in point to require discussion. The case of *Minsky* v. *Hyman* is a memorandum decision, and the facts have not been furnished me. In *Wiggins* v. *Downer* (67 How. Pr. 65), cited by defendant's counsel, the jury was instructed by the court in its charge to pass upon four questions of fact, and that if they decided all of those questions in favor of the plaintiff their verdict should be for him, but that if they decided in favor of the defendant upon any one of these questions their verdict should be for the defendant. After being out for several hours the jury came into court and stated that they were unable to agree, whereupon they were told by the presiding justice in open court that he did not feel warranted in discharging them until they had given the case further consideration. Upon being asked by one of the jurors to repeat the four propositions which they were to pass upon, the justice outlined them, as he had

previously stated in the charge, and said " if you find for the plaintiff you must find on each one of these questions in favor of the plaintiff." Neither party was present in person or by counsel, defendant's counsel having left the city. Held, that it was not an error for which a new trial should be granted for the judge to thus instruct the jury in open court, but in the absence of counsel whose attendance could not have been secured before morning. An expression to a jury by an officer in charge of an opinion that unless they agreed they would be detained until the next day at noon, although improper, is not such an irregularity as should avoid the verdict. It does not amount to an illegal restraint. While the affidavit of jurors will not be received to show their own misconduct, or that of their fellows, they are probably admissible to show the misconduct of the officer having them in charge, but not to show its effect upon their own minds. Jurors should not be permitted to stultify or criminate themselves by swearing that they sacrificed their convictions in order to be relieved from a temporary inconvenience. The case of *Thomas* v. *Chapman* (45 Barb. 98), cited in defendant's memorandum, went the extreme length of holding that it was sufficient for the party complaining of a verdict to suspect that improper statements were made, and, if made, that they were likely or calculated to influence the verdict, and that it was not necessary to show that the jury was in fact influenced. Statements referred to were made by an officer to the jury. In the case of *Nesmith* v. *Clinton Fire Insurance Co.* (8 Abb. Pr. 141), cited by defendant, a verdict for the plaintiff was set aside because " during the trial of the action turning upon much conflicting testimony, a juror listened to the statements of a third party attacking the credibility of the defendant's witnesses." The verdict in the case of *Matter of Vanderbilt* (127 App. Div. 408), cited by defendants, was set aside because the attorney for the petitioner paid the jurors one dollar per day, which they received knowing that they were not legally entitled to be paid but twenty-five cents a day, and that not by petitioner. In the case cited by defendant of *Adams Laundry Machinery Co.* v. *Prunier* (74 Misc. 529), which was an action to recover the price of laundry machinery, one of the chief points at issue was whether it stood solid or jumped about on the floor, and the court held that it was improper for jurors to go to the premises without knowledge of the parties and examine the machinery to see if it was bolted down, and talk to persons about it, and the verdict was set aside, even though the jurors made affidavit they were not influenced by what they saw. Defendant's counsel quotes from 38 Cyc. 1824, but the language following defendant's quotation reads as follows: " Where some of the jurors

make an unauthorized view, the irregularity is not cured by direction of the court to the entire jury to make the view. On the other hand, it has been held that not every unauthorized view or inspection will be sufficient ground to set aside the verdict, and if it conclusively appears or is reasonably clear that no prejudice resulted to either of the parties, or that there was only a bare possibility that there was a prejudicial result, the verdict must stand." In the case of *Pool* v. *C., B. & Q. R. Co.* (6 Fed. 844), cited by the defendant on page 6 of its memorandum, the verdict was set aside because a number of the jurors passed consecutive evenings at cards in the rooms of one of defendant's counsel. In the case of *Curry* v. *Quait* (100 Misc. 604), cited by defendant, the court held that upon a motion to set aside the verdict and for new trial, neither the affidavits of jurors nor of other parties, detailing what jurors had said about the case which would tend to impeach the verdict rendered thereon, may be considered. It was held that where a juror does not deny that pending the trial of a negligence action he visited the scene of the accident, as stated in the affidavit of disinterested parties, and neither he nor any of his fellow jurors who made affidavits read in opposition to a motion to set aside the verdict in favor of the defendant stated that the subject of the juror's visit which was made more than nine months after the accident occurred, and what he discovered on that visit, *was not discussed or argued by the jury during their deliberations*, the motion will be granted. In other words, if the discovery of the juror on that visit was not discussed or argued by the jury during their deliberations, the motion would have been denied. In the case of *Johnson* v. *Riter-Conley Manufacturing Co.* (149 App. Div. 543), discussed on page 5 of defendant's memorandum, a juror going home during the adjournment of a trial received information from certain witnesses in the case that there had been two previous trials, one of which resulted in a large verdict for the plaintiff, and the second in a disagreement. In that case, of course, the court set aside the verdict. In the case of *People ex rel. Munsell* v. *Court of Oyer & Terminer of County of New York* (101 N. Y. 245), cited by defendant, a juror went to the scene of an assault with intent to kill. It does not appear from the memorandum of defendant's counsel what was done with the case, but, of course, a trial for felony necessitates a different application of the rule in regard to setting aside verdicts from that required in a negligence case. As appears from the memorandum of defendant on page 8, in the case of *Morrow* v. *Dotts* (208 App. Div. 788) a juror went to the scene of the accident and also talked to the witnesses during the trial. There, of course, the verdict was set aside. In the case of

*Luquer* v. *Bunnell* (170 N. Y. Supp. 665), cited by defendant, a verdict for defendant in a personal injury case was set aside because during the trial some members of the jury visited the place of the alleged accident and inspected a hinge which plaintiff testified was the cause of his fall. In the case of *Sparks* v. *Wakeley* (7 N. Y. Wkly. Dig. 80), cited by defendant, a juror had conversed with persons about the case concerning the character or conduct of the parties, and one of these persons told a juryman " that the defendant was an honest old Dutchman; * * * as to the plaintiff he was disagreeable, impetuous, and ugly, more difficult to get along with, and flew to pieces about nothing. I talked with juryman about fifteen minutes, had two conversations with him and I think other jurymen were present * * * on the same day the cause was being tried, just before the jury went out. The juryman told me after this that he thought the result would be no cause of action." In the case of *Bloodgood* v. *Whitney* (200 App. Div. 56), cited by defendant, a juror was withdrawn because plaintiff's counsel in addressing the jury intimated that the defendant was a political king and that one of his witnesses was serving him, and that he was probably sitting in his office with his feet on the desk laughing at the character of the testimony being given. It does not apply here. In the case of *Walsh* v. *Frankenthaler* (186 App. Div. 62, 65), cited by defendant, there was a reversal because counsel sought to establish that the defendant was a man of wealth, and used this to create bias on the part of the jurors, and described the defendant as a selfish and unfeeling monster regardless of his obligations to others. Another reason for setting aside this verdict was that an X-ray had been admitted without proof of its genuineness, and while the photograph was not exhibited to the jury, plaintiff's medical witness described to the jury a double fracture that it showed. Subsequently the photograph was withdrawn, and the jury were instructed to disregard it, and defendant's request for a mistrial was refused. This the court held to be error. In the case of *Bronk* v. *Binghamton Railroad Co.* (79 App. Div. 269), cited by defendant, defendant brought into court a gong which it claimed had been attached to the car in question. The court prohibited the gong from being sounded. Notwithstanding this at a recess of the court the gong was rung by an officer of the defendant and by one of its counsel in the presence of most of the jurors. The court charged the jury to entirely disregard the sounding of the gong, but after they had found a verdict in favor of defendant, set aside the verdict solely on the ground of the unjustifiable ringing of the gong. The court held that the order setting aside the verdict was proper. But another reason for setting aside

the verdict was that the court declined to charge "'that it is not negligence as a matter of law for a man to drive on the tracks of a street railway or near the track of a street railway, that it is simply a question whether, under all the conditions, the man was negligent in so driving." This was held to be error. It will be observed from the brief analysis of the cases cited by the defendant that not one of them was at all like the case at bar, except the case just referred to. There the decision was based evidently upon a deliberate violation of the court's instruction not to ring the gong.

In many cases the courts have held that refusal of a motion to withdraw a juror was a matter of discretion, and that they would not reverse for such refusal. In the case of *Burrill* v. *Phillips* (1 Gall. 360; Fed. Cas. 2200) the court held that if before a verdict was agreed on one of the jury separated from his fellows by mistake and afterwards rejoined them and a verdict was found, it was in the discretion of the court to allow the verdict to stand. In *Chesebrough, etc.,* v. *Conover* (140 N. Y. 382) defendant's counsel, at the opening of the trial, moved for judgment on the complaint. Plaintiff's counsel, in opposing, stated, among other things, that on a former trial a verdict had been rendered for plaintiff. Defendant's counsel excepted and asked the court to withdraw a juror, or discharge the jury, so that another jury might be impanelled which had not heard this statement. The motion was denied. In submitting the case the court, at the request of defendant's counsel, instructed the jury that they had nothing to do with the former trial. Held, that the refusal of the court to grant the motion was not a legal error reviewable here; and that while the remark was improper, the vice was eliminated by the charge. In the opinion, page 388, it is stated: " The remark was undoubtedly an improper one, but the refusal of the court to grant the defendant's motion was not a legal error reviewable in this court. The motion was addressed entirely to the discretion of the court which could grant or refuse it, taking into consideration the circumstances surrounding the case." The contention of the plaintiff, who seeks to sustain this verdict, is that " not every act of misconduct committed by jurors during the trial makes it necessary for the court to suspend the trial, or in case the trial is completed, justifies the granting of a motion for new trial; if it can be seen that the misconduct was inadvertent, and did not result in harm to the complaining party, the trial may proceed, or the verdict, if one has been rendered, may be permitted to stand." " The question as to what course shall be pursued in the event of misconduct on the part of the jurors rests largely on the part of the trial judge and the consideration of all the circumstances. In the case of *Buffalo Structural*

*Steel Co.* v. *Dickinson*, cited by plaintiff, the court questioned jurors who on their own initiative visited a building, a claim for the construction of which was involved in the litigation. The court was informed that their purpose was to enable them to understand the evidence, and that they were entirely impartial. Plaintiff's counsel then, at the suggestion of the court, moved for the inspection by the entire jury, which was granted over defendant's objection. It was upon this ground that the verdict was set aside on a motion for a new trial. The court held that the action of the two jurors constituted misconduct, but that the trial judge, in the exercise of his discretion, would have been justified in proceeding with the trial, notwithstanding such misconduct. * * * If it can be seen that the misconduct was inadvertent, and did not result in harm to the complaining party, the trial may proceed, or the verdict, if one is rendered, may be permitted to stand." In the present case, as the court says in *Buffalo Structural Steel Co.* v. *Dickinson* (98 App. Div. 355, cited *supra*): "He [the trial justice] knows the state of the proofs, the exact issues involved, and has the advantage of hearing from the offending juror what prompted his act and to some extent, its effect upon him." In *Haight* v. *City of Elmira* (42 App. Div. 391), cited by plaintiff, it appeared that the inspection by certain members of the jury disclosed only views that were not disputed, and it was held that the trial judge properly determined that the conceded misconduct did not injuriously affect the interests of the defendant. In the case of *City of Indianapolis* v. *Scott* (72 Ind. 196), cited by plaintiff, it was alleged as a ground for a new trial that on view of the place by the jury where such accident occurred one of them uncovered the end of one of the sleepers and in doing so broke off a small piece of it and crumbled it with his fingers, and that another cut the end of it with his knife. Held, that such misconduct on the part of the jurors was not such as would vitiate the verdict in the absence of anything showing that such acts had some influence in the formation thereof. In the case of *Moore* v. *New York Elevated Railroad Co.* (18 N. Y. Civ. Proc. 146), cited by plaintiff, a motion for a new trial because of the misconduct of the jury was "properly denied for the reason that no objection had been made because thereof before verdict; that the irregularity could have been effectually cured either by having all the jurors visit the premises in charge of an officer or by discharging the jury from further consideration of the case." This case turned on a point not under consideration here. In *Commonwealth* v. *Roby* (29 Mass. [12 Pick.] 496), cited by plaintiff, the court held: "Where there has been an irregularity or misconduct on the part of jurors, *which might affect their impartiality or dis-*

*qualify them for the proper exercise of their reason and judgment,* their verdict should be set aside; but in other cases the proper mode of correcting the irregularity is by animadversion upon the conduct of the jurors or the officers having them in charge." This is inapplicable, because in the case at bar the court did instruct the jury to disregard the visit of the juror. In *Buffalo Structural Steel Co.* v. *Dickinson (supra)* the court said: " In such cases the judge must determine whether the misconduct complained of is of such a character as, considering all the circumstances, would injuriously affect the parties' interests; and whether to proceed with or end the trial or to grant a new trial in case a verdict is rendered, must rest very largely in the discretion of the judge presiding. He knows the state of the proofs, the exact issues involved and has the advantage of hearing from the offending juror what prompted his act and to some extent its effect upon him. In the case at bar, after a careful examination of the record before us, we are not prepared to say that the court would not have been justified in holding that the misconduct of the two jurors referred to did not injuriously affect the interests of the defendant and in proceeding with the trial if nothing further had occurred. What had been done by the two jurors was clearly inadvertent; no one was really blamable; simply a mistake had been made by two apparently honest and conscientious jurymen, and if they had been instructed to disregard any fact which they learned by the inspection made by them we think under the circumstances the defendant would not have had just ground for complaint." In *Holmes* v. *Moffat* (120 N. Y. 159, 162), cited by plaintiff, the court held: " They [the jury] were informed that the objectionable testimony was not before them as evidence at all. * * * such instruction, coupled with the positive direction to disregard it, must be deemed to have been effectual for the purpose intended. The course adopted by the trial court would seem to be in harmony with the theory upon which the practice governing trials by jury is founded. It assumes that the jury will give heed to the suggestions of the court." In the case of *Pontius* v. *People* (82 N. Y. 339), cited by plaintiff, it was merely held that after acquiescence in the reception of the evidence, and improving the opportunity afforded by it for cross-examination, it was too late to ask to have the evidence stricken out. The case of *Marks* v. *King* (64 N. Y. 628), cited by plaintiff, is not applicable, because it merely held that evidence admitted upon a trial by jury, either without an objection or properly under objection, which for any reason should not be considered by the jury, is not necessarily to be stricken out on motion, but may be retained, in the discretion of the court, and that the remedy of the

party is to ask for instructions to the jury that they disregard it. In the case of *Pennsylvania Co.* v. *Roy* (102 U. S. 452), cited by plaintiff, it was held that: "Where, before the final submission of the case to the jury, irrelevant evidence, which had been admitted, was withdrawn, and they were instructed to disregard it — Held that an exception to the action of the court will not be sustained, the presumption being, so far as this court is concerned, that, under such circumstances, the jury based their verdict upon legal evidence only" (headnote). The court said: "The charge from the court that the jury should not consider evidence which had been improperly admitted, was equivalent to striking it out of the case. The exception to its admission fell when the error was subsequently corrected by instructions too clear and positive to be misunderstood by the jury. The presumption should not be indulged that the jury were too ignorant to comprehend, or were too unmindful of their duty to respect, instructions as to matters peculiarly within the province of the court to determine. It should rather be, so far as this court is concerned, that the jury were influenced in their verdict only by legal evidence. Any other rule would make it necessary in every trial, where an error in the admission of proof is committed, of which error the court becomes aware before the final submission of the case to the jury, to suspend the trial, discharge the jury, and commence anew. A rule of practice leading to such results cannot meet with approval." (In this case the judgment was reversed solely for the error by the court.) "The court, in a manner well calculated to attract the attention of the jury, withdrew from their consideration the evidence in regard to the financial condition of the plaintiff, but as nothing was said by it touching the evidence as to the ages of his children, they had the right to infer that the proof as to those matters was not withdrawn, and should not be ignored in the assessment of damages." The case of *Stouter* v. *Manhattan Railway Co.* (127 N. Y. 661), quoted by plaintiff, is not quite applicable. It merely holds that while questions excluded upon objection frequently suggest something to the jury they have no right to consider, unless such questions are persisted in so as to amount to an abuse, they will not furnish a ground for a reversal, and it seems if the opposite party fears that the jury may be influenced by such questions his remedy is to ask the court to instruct the jury to disregard them. In *Blair* v. *McCormack Construction Co.* (123 App. Div. 30), cited by plaintiff, it was held that where a juror in an action for personal injuries was asked in his *voir dire* whether he was a stockholder in a specified indemnity insurance company, and an objection was sustained, and the jury instructed that the mention of the

company must not influence it and had no bearing on the case, it sufficiently secured the rights of the defendant. In *Anderson* v. *Standard Plunger Elevator Co.* (113 N. Y. Supp. 593), cited by plaintiff, which was an action against a master for the injuries by a servant's negligence, plaintiff's counsel asked the jury before they were sworn if any of them were stockholders in a certain insurance company, whereupon defendant asked for a mistrial, but the question was not pursued further, and the motion for a mistrial was denied. The court held that even if the question was not proper, it was not reversible error; the small amount of the verdict for plaintiff, which was amply sustained by the evidence, showing that it was not prejudicial. The case of *Wager* v. *Corwin* (72 App. Div. 485), cited by plaintiff, is authority for the statement that an attempt on the part of one of the parties to an action, which is being tried before a jury, to place before the jury the fact that his adversary has made an offer of judgment, will justify the trial justice in granting the adversary's motion to withdraw a juror, but the error, if any, involved in the denial of such motion is cured where the trial justice, in his charge, positively and directly instructs the jury to disregard the alleged offer. The case of *Doherty* v. *Lord* (8 Misc. 227), cited by plaintiff, is inapplicable. The case of *Riegler* v. *Tribune Association* (40 App. Div. 324), cited by plaintiff, holds that while in an action by the plumber against the master to recover damages for such injuries, it is erroneous to admit evidence that benzine had been thrown from the windows of the master's establishment on other occasions, the error is cured where the court, at the request of the defendant's counsel, instructs the jury to disregard the evidence. And in the case of *Mattes* v. *Frankel* (65 Hun, 203), cited by plaintiff, it was held that the act of Mattes in pointing out the right of way to the barn as an existing right of way was a representation that such right of way existed, and that as the purchaser had relied upon it Mattes was estopped to deny its existence; that where improper evidence is received upon a trial and the court, without striking out the evidence, withdraws it from the consideration of the jury, and instructs them that the only question is one upon which the improper evidence had no bearing, the judgment will not be reversed on appeal. The Supreme Court, General Term, Third Department, May, 1888, in the case of *Carley* v. *New York, O. & W. R. R.* (48 Hun, 619), cited by plaintiff, held that under the Code of Civil Procedure, section 1003, providing that a new trial shall not be granted for error in admitting testimony, where the court is of the opinion that substantial justice does not require it, a new trial will not be granted in an action against a railroad company for damages caused

by a fire set by sparks from its engines, for error in admitting testimony concerning its spark arresters, where the case turned on the fact that defendant had negligently allowed the rubbish to accumulate along its track. There are many cases to the effect that evidence improperly admitted is cured by the subsequent action of the court in striking it out, and directing the jury to disregard it. In *Hatch* v. *Terry* (153 App. Div. 230) it was held that where the court in an action to recover for personal injuries caused by an automobile admits, tentatively, proof of the fact that the chauffeur had no license, but subsequently charges that the fact is not proof that he was guilty of negligence at the time of the accident, the error, if any, in admitting such evidence was cured by the subsequent charge. This is true although the evidence was not subsequently stricken out, for it is presumed that the jury obeyed the instruction of the court. It is presumed on appeal that the jury understood and followed the instructions of the court. (*Harper & Reynolds* v. *Wilgus*, 56 Fed. 587; 4 C. J. 771.) In *Holmes* v. *Moffatt* (120 N. Y. 159, 162), cited by plaintiff, the court charged: " I think it my duty to say to you that that particular portion [of the evidence] * * * is not before you as evidence." Held, that as there was other evidence to support the verdict, it was to be presumed that the instruction to the jury was complied with and that the error complained of was cured. The Cyclopædia of Law and Procedure, volume 38, says (at p. 1444): " On the other hand it is held in many cases that an error in admitting improper evidence may be cured by an instruction which in effect directs the jury to disregard such evidence, which renders it immaterial, or which so explains it that it can work no prejudice to appellant, which takes away from the party offering it all possible advantage which he might have gained from its introduction, or which renders it impossible that the jury could have been misled. Thus the admission of improper evidence is no cause for reversing a judgment, if the court afterward peremptorily instructs the jury that it is incompetent, or insufficient to establish the fact for which it was introduced, or that the facts sought to be established by such testimony, if proven, would not warrant a recovery, or constitute a defense, as the case may be." The case of *Ives* v. *Ellis* (169 N. Y. 85, 91), cited by plaintiff, is inapplicable here. In the case of *Smith* v. *Thompson* (1 Cow. 221), cited by plaintiff, there was a motion to set aside the verdict for irregularity in the conduct of the jury. In this case, after they had retired, and remained from six P. M. to three A. M., without being able to agree on their verdict, two of the jurors eluded the care of the constable, left the juryroom,

and one of them remained at a neighboring tavern during the night; the other went to his own house, which was nearby, ate his supper there, and stayed all night. Both jurors returned, however, and the whole were together and went into court the next morning. They informed the court that they had not agreed, stated the point to the court wherein they differed, took their advice, retired and found a verdict for the plaintiff. No improper communication with the jury appeared, and no probability that their absence had produced any effect upon their minds in making up their verdict. " *Curia.* It was clearly irregular in the two jurors to separate from their fellows. But this does not affect the merits of the case, as between the parties. The ancient strictness, in relation to the conduct of jurors, is somewhat relaxed, as may be seen in *Hackley* v. *Hastie & Patrick* (decided by this court, 3 Johns. 252). Whether the verdict is to be set aside, must depend upon circumstances and the real justice of the case. If there is a probability of abuse, we then notice it; but here is none." There is a very exhaustive note in that case that "different degrees of strictness, in relation to the conduct of juries, have prevailed at different times; and, it may be added, that their misconduct is viewed in different lights, and with more or less jealousy, according to the nature of the cause, as to whether it be civil or criminal." In this case two jurors, after the jury had retired to consider their verdict, separated from their fellows, and were gone some hours, but returned and joined in the verdict. There appearing to have been no probability of abuse, the court refused to set aside the verdict. The case of *Cleveland-Akron Bag Co.* v. *Jaite* (112 Ohio St. 506), cited by plaintiff, is inapplicable, because it simply holds that the mere fact that a juror, while on her way to the jury box, asked to see the injured hand of a plaintiff, which had theretofore been exhibited to the jury and the character of the injuries thereto fully testified to, is not of itself cause for a mistrial. The court held in *People* v. *Buchanan* (145 N. Y. 1), cited by plaintiff, that the denial of a motion for a new trial was in the discretion of the court, and that the discretion was properly exercised. In that case, after the jury had retired and they had agreed upon their verdict, they were taken to a hotel for dinner, where one of their number was taken suddenly ill. Later the juror improved and took his seat with his associates, and they shortly returned with their verdict. It was held that the verdict was properly received. In the criminal case of *People* v. *Dunbar Contracting Co.* (215 N. Y. 416, 426), cited by plaintiff, Judge CARDOZO, writing for the entire court, said: " The misconduct must be such as to prejudice a party in his substantial rights (*Haight* v. *City of Elmira*, 42 App. Div. 391, 395;

*People* v. *Buchanan*, 145 N. Y. 1; *People* v. *Hoch, supra; State* v. *Baker*, 63 N. C. 276; *United States* v. *Davis*, 103 Fed. Rep. 457, 467). The cases cited show that this is true of an irregular separation as of other misconduct. In the words of STORY, J., in *Burrill* v. *Phillips* (1 Gall. 360), the verdict will not be set aside if the jury's conduct 'be free from unfavorable presumption.' *The courts below have full discretion to deal with such a question justly.* The exercise of their discretion is not reviewable here." In the case of *Cole* v. *Fall Brook Coal Co.* (159 N. Y. 59), cited by plaintiff, it was held that the question as to the power of the trial court to correct the effect of an improper statement of counsel to the jury is controlled by the same principle that is applicable when improper evidence is received and the court directs the jury to disregard it. In *O'Conner* v. *Ames Transfer Co.* (187 N. Y. Supp. 111), cited by plaintiff, the court refused to receive affidavits of jurors impeaching their verdict, and in an action which was for injuries received in the collision of automobiles, where verdict went for the defendant, it was held that plaintiff was not entitled to a new trial because a juryman had passed the scene of the accident and saw the position of the two cars and observed loose stone on the roadway, supposed to have been made by automobile on pavement at scene of accident where such juryman did not discuss with his fellow jurymen the fact of his having passed the scene of the accident, and the facts or physical situation that he observed or could have observed at the place of the accident was amply shown by the exhibits in the case. The case of *Platner* v. *Platner* (78 N. Y. 90), cited by plaintiff, was an action on a promissory note. The court simply held that " the denial of a motion to strike out incompetent evidence admitted on a jury trial without objection is not error; it may be retained in the discretion of the court; the remedy of the party is to ask for instructions to the jury to disregard it." The case of *Gans* v. *Metropolitan Street R. R.* (84 N. Y. Supp. 914), cited by plaintiff: An affidavit on which is based an application to set aside a verdict because of alleged misconduct of two jurors, to the effect that after the verdict was rendered the juror stated to affiant, who was a clerk in the office of plaintiff's attorney, that during the progress of the trial they had inspected a gate on one of defendant's street cars to ascertain whether the plaintiff's hand could have been injured in the manner testified to by him, and that such information influenced them in arriving at a verdict against the plaintiff, is hearsay. The misconduct of the two jurors in inspecting the gate of one of defendant's cars to ascertain whether the plaintiff's hand could have been injured in the manner testified to by him is harmless where the evidence indicates that the jury was

justified in finding for the defendant and there is nothing to show that a different conclusion would have been reached had the inspection not been made. This case was argued before Justices FREEDMAN, BISCHOFF and BLANCHARD, and the following is from the opinion of Mr. Justice BLANCHARD: "Had the testimony of the jurors themselves been offered this could not have been considered, as it has been repeatedly held that the evidence or declarations of jurors after verdict is not competent to impeach the same. (*Mais* v. *Ruh*, 57 App. Div. 16). * * * The evidence there indicates that the jury was justified in rendering a verdict for the defendant, and there is nothing in the record on appeal to indicate that the jury would not have reached the same conclusion even had these two delinquent jurymen not made the inspection." Even in the case of *People* v. *Schooley* (149 N. Y. 99), cited by the plaintiff, the headnote read: "Assuming that evidence offered upon the trial by the People, tending to show the absence of the defendant, and that he was trying to avoid a trial under the indictment, was improperly admitted, the error is cured by the subsequent action of the court in striking it out, and directing the jury to disregard it." The case of *Gall* v. *Gall* (114 N. Y. 110), cited by plaintiff, merely holds that where a court has received improper evidence in a civil action, under objection and exception, it may remedy the error by striking out the evidence of its own motion. (The following cases are not quoted in either the brief for the defendant or the plaintiff.) In the case of *Fort Worth Belt Ry. Co.* v. *Davis* (254 S. W. 219, 221, 222) the court refused to grant a new trial for misconduct of jurors in disclosing what they had individually seen of the accident, and the trial court held not to have abused its discretion, in view of the showing made that the misconduct did not affect the verdict. In its opinion the court said: "We do not think appellant is entitled to a reversal of the judgment, because of the refusal of the trial court to grant it a new trial for alleged misconduct of the jury, in that one of them, after they had retired to the jury room and were considering what their verdict should be, stated that he had passed over the crossing in question and 'saw lint cotton on the wire fence south of the oil mill,' and another one of them stated that he had passed over the crossing and that 'a flagman never flagged him.' At the hearing of the motion, the juror Justiss, one of six of the jurymen who testified, said the statements were made as alleged in the motion, but that they did not influence him in the verdict reached. The juror Pullman testified he heard juror Applivhite say, 'There might have been cotton lint on the fence,' but that he did not consider what he heard 'as evidence in the case.' The juror Ford said that after the jury

reached a verdict he heard one of them say he had passed over the crossing and saw cotton on the fence. The juror Sitthler said he thought some of the jurymen mentioned something about cotton being on the fence., or that lint cotton might have been on it. The juror Wilkinson did not hear the statements in question, if they were made, and the juror Osterman did not remember hearing them. The last-mentioned juror testified and was not contradicted, that the verdict was a practically unanimous one on the first ballot; that one of them ' didn't understand the reading ' (presumably referring to the court's charge), and that, after another reading, they took another ballot, and that the vote was unanimous on every question except as to the amount they should find for appellees; that two of the jurors did not agree with the others as to the amount on the first ballot, but all agreed on the second ballot. The juror Wilkinson testified that the only disagreement among the jurymen was as to the amount of their verdict — that they all agreed on $5,075 at once, except one, who suggested $5,000 instead, and that his suggestion was promptly accepted. We do not think it should be said that the trial court abused the discretion he had about the matter when he refused to grant a new trial on the showing made. *Electric Co.* v. *Hanson*, (Tex. Civ. App.) 187 S. W. 533."

In the case of *Dittman* v. *City of New York* (58 Misc. 52) defendant's counsel learned that one of the jury visited the scene of the accident and reported the result of his observations long after the accident occurred. The defendant moved to set aside the verdict on the ground that the conduct of such juror was prejudicial because " the attention of the jurors was brought to facts outside the record which might and probably did affect the verdict rendered." But in view of the fact that each of the jurors made an affidavit that his verdict was solely upon the evidence and the instructions of the court and that the alleged visit was not discussed or argued by the jury, the court refused to set aside the verdict. In *Harrison* v. *Price* (22 Ind. 165), the court said that the misconduct of a juror in order to be sufficient to justify the granting of a new trial, must be gross and must have resulted in manifest injury to the complaining party. The mere fact that a juror, pending a trial, and whilst the jury were separated for dinner, expressed the opinion that the jury would find for the plaintiff, without other improper conduct, would not be sufficient ground for a new trial. In the case of *United States* v. *Davis* (103 Fed. 457), where the separation of the jury was made the ground for new trial by defendant, it was held that he must show prejudice by something more than the bare fact of separation, unless the circumstances of the separation are of themselves sufficient to indicate prejudice, and that " allowing a

juror, under the eye of an officer having the jury in charge, to go into the lavatories and closets, to go to a drug and other stores, to ask the marshal for supplies, and to speak to men in the court room in the hearing of the marshal, is not such a separation of the the juror as creates a presumption of prejudice, and imposes upon the State the burden of proving that no prejudice resulted." In *Erben* v. *Lorillard* (19 N. Y. 299) and *Furst* v. *Second Avenue R. R.* (72 id. 542), distinguished, it was held that where the court instructs the jury to disregard testimony, improperly received, and there is other evidence to support the verdict, it will be presumed that the instructions were obeyed and the error, in its admission, cured.

To summarize: There was no reason to set the verdict aside in this case because no prejudice or passion had been shown on the part of the jury. The impropriety on the part of juror No. 6 was harmless. It was discovered in time to be cured by the court's direction to the jury to disregard it. There is a presumption that a jury heeds the charge of a court. It was not shown that the juror's visit influenced him or the other eleven jurors. In fact, the contrary was shown. Affidavits or evidence may not be received to impeach a verdict, but may be received to sustain it. Finally, the setting aside of the verdict was a matter of discretion on the part of the trial court, and being fairly exercised it may not be disturbed unless harm has been done the objecting party. The cases submitted by the defendant do not sustain its position that the jury's verdict should be set aside, while those of the plaintiff do sustain her contention that it should not be set aside. There is no case submitted by defendant where a verdict has been set aside if the impropriety of a juror's visit was discovered before verdict, and cured by a proper charge. Motion of defendant to set aside the verdict and for a new trial is denied.

## NOTE A.

Quebec was one of the first to provide for less than unanimous verdicts. Notwithstanding England's unanimous verdict rule, it was condemned by the English Common Law Commission of Experts in 1831, and they proposed that juries be not permitted more than twelve hours to consider a case unless they unanimously requested it, and that if nine concurred in a verdict in twelve hours more, it should be taken. Lord CAMPBELL declared for majority verdicts and introduced a bill providing for them. In 1848 the English Parliament enacted a law that in the Bahama Islands a valid verdict may be returned by two-thirds of the jury in civil cases, and in criminal cases other than capital.

Article 1, section 5, of the Constitution of the State of Ohio, by virtue of the 1912 amendment, provides that a law may be passed for a three-fourths verdict in civil cases. (Ohio Anno. Code of 1929, §§ 10350 and 11455.)

In the 4th section of article 4 of the 1857 Constitution of Minnesota, by virtue of an amendment in 1890, it is provided that a law might be passed for five-sixths verdicts in civil cases after not less than six hours' deliberation. Section 9301 of the Minnesota statutes (Mason's Minnesota Statutes, 1927) provides for five-sixths verdicts in civil actions after twelve hours' deliberation.

As early as 1644 Connecticut had a law for two-thirds verdicts of either six or twelve jurors. This law does not appear in the revision of 1673, but in 1855 a law (Chap. 26, § 30) was passed that less than a unanimous verdict might be stipulated for between the parties. (In New York it is frequently stipulated that eleven jurors can proceed to a unanimous verdict in cases where one juror dies or cannot continue.) The 1930 revision of the General Statutes in Connecticut, section 5656, provides for a verdict by not less than nine if the parties agree in writing before rendition of the verdict that nine-twelfths verdicts may be received.

In 1864 in Nevada, article 1, section 3, of the Constitution provided that the Legislature might provide for three-fourths verdicts in civil cases. But the Legislature has not yet passed such an act.

In 1875 article 2, section 28, of the Constitution of Missouri provided that a law might be passed for less than unanimous verdicts as prescribed by law, in courts not of record, and two-thirds verdicts in civil cases, but in courts of record three-fourths verdicts are required. (See Missouri Revised Statutes of 1929, section 8768, regarding three-fourths verdicts in civil cases in courts of record.)

In 1876 article 5, section 13, of the Constitution of Texas provided for a law authorizing three-fourths verdicts in misdemeanor cases in the District and County Courts, and provided that in civil cases a jury of twelve may be excused down to three-fourths, but that the three-fourths must be unanimous, and each juror must sign his verdict. (See Vernon's Anno. Texas Statutes, vol. 6, arts. 2191–2204.)

In 1879 article 1, section 7, of the Constitution of California provided for a law permitting three-fourths verdicts in civil cases. And in civil actions and misdemeanors the jury may consist of less than twelve if the parties agree.

In Washington in 1889 article 1, section 21, of the Constitution provided for a law allowing three-fourths verdicts in civil cases.

In all Superior Court trials there may be a verdict by ten-twelfths vote. (Remington's Comp. Stat. 1922, § 358.)

In section 23 of article 1 of the 1889 Montana Constitution it is provided that except in felony cases a law might be passed permitting less than unanimous verdicts, and that in civil cases and also in misdemeanors there could be two-thirds verdicts. (See Choate Rev. Code, 1921, § 9353.)

Article 3, section 31, of Mississippi's Constitution of 1890, as amended in 1916, provided that a law might be passed for three-fourths verdicts in Circuit and Chancery Courts. (Code of 1930, § 2067.)

The Kentucky Constitution of 1891, section 248, provided for a law permitting three-fourths verdict in civil cases.

The Utah Constitution of 1895, article 1, section 10, provided for a law authorizing a jury of eight and in civil cases three-fourths verdicts.

In 1895 in Ontario the law was amended to permit ten-twelfths verdicts, and where more than one question was submitted it was not required that the same ten jurors should agree to every answer.

Article 1, section 9, of the Wyoming Constitution of 1889 provides that juries in civil cases may consist of less than twelve in all courts or in criminal cases in courts not of record, as provided by law. Section 1230 of the Wyoming Compiled Statutes of 1920 provides for twelve on the jury. The Laws of 1927, chapter 15, provide for an alternate juror, which the index calls the " thirteenth juror."

Article 1, section 7, of the 1889 Constitution of Idaho provided for three-fourths verdicts in civil cases and for five-sixths verdicts in misdemeanors, if the Legislature so provides.

Article 2, section 19, of the 1907 Constitution of Oklahoma provided for three-fourths verdicts in civil cases and misdemeanors.

Article 2, section 23, of the 1910 Constitution of Arizona provided that a law might be enacted for three-fourths verdicts in civil cases in any court of record. Section 3823 of the 1928 Revised Code of Arizona provides for three-fourths verdicts in civil actions where twelve jurors have been impanelled.

The Arkansas Constitution of 1874, as amended, in article 2, section 7, provides that jury trials may be waived in the manner prescribed by law.

The Oregon Code of 1930, section 30–104, provides for jury trial by twelve men in Circuit and six in County and Justices' Courts. A verdict shall be unanimous, but an inquest is sufficient if two-thirds concur.

The Nebraska Constitution of 1875, article 1, section 6, says the Legislature may authorize verdicts in civil cases by not less than

five-sixths. But the jury must deliberate at least six hours (Laws of 1921, chap. 534).

Wisconsin authorizes five-sixths verdicts in civil cases and misdemeanors. (See Wisconsin Comp. Stat. of 1929, chap. 270, § 25, p. 1997.)

In 1928 the Crime Commission of New York reported against less than unanimous verdicts, but in 1930 its sub-commission on courts said (p. 83): " While the unanimous verdict of a jury has attached to the jury system for many years, it had more reason for being when the jury system was created than at the present time. In the olden days a jury was impanelled from among the neighbors of the litigants. * * * In modern times juries are chosen from a more widely extended territory and because they do not know the parties or attorneys in the case rather than because they do. This change makes the determinations of juries similar to those in the commercial and political world. Majority rule exists in boards of directors and trustees, in the election of public officials, and in the decisions of our courts where more than one judge sits. We earnestly believe in * * * a verdict by five-sixths in civil or criminal cases, except * * * the crime * * * is * * * punishable by death, would be a wholesome and helpful change * * * if the jury system is to be continued." The Crime Commission in adopting this sub-committee report said: " We earnestly recommend to the Legislature for its approval an amendment to the Constitution * * * empowering the legislature * * * to provide that verdicts in cases tried by juries may be rendered by * * * by five-sixths * * * in any civil or criminal action except where the crime is * * * punishable by death * * *." A bill has been introduced in both the Assembly and the Senate to amend the Constitution by permitting five-sixths verdicts in all cases except death cases. Grand juries of twenty-three, which can act when sixteen are present, can indict on twelve votes. If the full grand jury is present eleven may disagree and the indictment can be voted by a majority of one. (Code Crim. Proc. §§ 224, 268.) A jury of twelve to twenty-four can decide that a man is insane by a vote of twelve to eleven. (Civ. Prac. Act, §§ 1366, 1367.)

The change to less than unanimous verdicts has been advocated by the American Bar Association, New York County Lawyers' Association, the Bronx Bar Association in committees. The New York County Lawyers' Association's sub-committee said: " Our belief is that in many cases unanimity on the part of the jurors is only apparent * * * and frequently purchased at the sacrifice of truth. * * * Still further it seems to us that psychological

effect of the knowledge that one juror may not by his insistence block the rendition of a verdict, will tend to more reason and logic in the deliberation of any jury." Mr. Augustus Thibadeau and another distinguished lawyer made illuminating addresses before the sixth annual meeting of the Federation of Bar Associations of Western New York at Geneva, New York, on June twenty-seventh on this subject.